## KNOWLES v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 3, 1909.)

No. 2,917.

**1.** POST OFFICE (§ 50*)—OFFENSES AGAINST POSTAL LAWS—MAILING OBSCENE MATTER—QUESTIONS FOR JURY.

In a prosecution under Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658), for depositing an obscene, lewd, or lascivious paper in the mails, there is a preliminary question for the court to determine whether the writing could by any reasonable judgment be held to come within the prohibition of the law, and, whenever reasonable minds might reach different conclusions as to its character, it is the duty of the court to submit the question to the jury. The court cannot properly in any case declare the writing to be within the statute as matter of law.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 88; Dec. Dig. § 50.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

**2.** POST OFFICE (§ 31*)—OFFENSES AGAINST POSTAL LAWS—MAILING OBSCENE MATTER.

In a prosecution under Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658), for depositing obscene, lewd, or lascivious matter in the mails, the purpose of the defendant is immaterial, and that his motive was good is no defense.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 50; Dec. Dig. § 31.*]

**3.** CONSTITUTIONAL LAW (§§ 84, 90*)—CIVIL RIGHTS—POSTAL LAWS—MAILING OBSCENE MATTER.

The constitutional guaranties of religious freedom and freedom of the press have no application to Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658), excluding from the mails papers or writings that are obscene, lewd, or lascivious.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. §§ 84, 90.*]

**4.** POST OFFICE (§ 31*)—OFFENSES AGAINST POSTAL LAWS—MAILING OBSCENE MATTER—CONSTRUCTION OF STATUTE—"OBSCENE."

In Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658), making it a misdemeanor to mail any obscene, lewd, or lascivious paper or writing, the word "obscene" should be given fully as broad a significance as it had at common law.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 50; Dec. Dig. § 31.*

For other definitions, see Words and Phrases, vol. 6, pp. 4887–4889; vol. 8, p. 7735.]

**5.** POST OFFICE (§ 31*)—OFFENSES AGAINST POSTAL LAWS—MAILING OBSCENE MATTER.

The true test to determine whether a writing is nonmailable under Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658), as obscene, lewd, or lascivious, is whether its language has a tendency to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands it may fall, by arousing or implanting in such minds obscene, lewd, or lascivious thoughts or desires.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 50; Dec. Dig. § 31.*]

**6.** POST OFFICE (§ 50*)—OFFENSES AGAINST POSTAL LAWS—MAILING OBSCENE MATTER.

Whether or not a newspaper article commenting on the death of a young unmarried woman as the result of an attempted abortion, and in

effect approving fornication and condemning society for its attitude toward it, was obscene, lewd, or lascivious and rendered the mailing of the paper containing it a criminal offense under Rev. St. § 3893, as amended in 1888 (U. S. Comp. St. 1901, p. 2658) *held* a question for the jury.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 88; Dec. Dig. § 50.*]

In Error to the District Court of the United States for the District of South Dakota.

The defendant was indicted for a violation of section 3893 of the Revised Statutes (U. S. Comp. St. 1901, p. 2658), as amended, which prohibits the use of the mails for the circulation of obscene writings. He publishes at Deadwood, S. D., a weekly paper called "The Lantern." The issue of March 30, 1907, contained the following article, written by him:

"A good illustration of the beauties of our social system was recently given when 'society' in Lead and Deadwood was convulsed by the news that a most sweet and amiable young woman had died at Denver from the effects of an operation performed upon her to hide what society calls her 'shame.' And what was this thing which society blasphemously brands as 'shame'? Why, simply that an unmarried girl having disregarded the sanctions of some priest or magistrate, had made the discovery that God had worked in her the wonderful miracle of motherhood. So this poor girl, having been taught from infancy that such a thing constituted 'shame,' kills her unborn child and in so doing kills herself. That the father and mother of this murdered child were designed by nature for each other is proven by the fact that they could not resist their mutual attraction, even in the face of great social peril. Love had its way, and God blessed the union with the most stupendous fruit of the universe, a human child; and 'society' steps in and cries 'shame' and causes the mother to kill both herself and her child. It is a well established fact in physics as well as in history that there are no children so likely to be healthy, robust, so mentally and bodily fit to survive as those very 'love children' who are killed in the wombs of foolish mothers driven to do the fiendish deed by 'society' and public opinion. Since the dawn of history, the great army of genius has been largely recruited from the ranks of illegitimates. Love's offerings have filled the earth with art, music, poetry, and wisdom, as if putting to shame those very ones who cry 'shame' and as taunting them with their own inferiority. Society is as guilty of the murder of this girl as though she had been put to death by the public hangman."

The depositing in the post office of the paper containing this article is the offense alleged. The cause was submitted to the jury in a charge to which no exception has been reserved, and resulted in a verdict of guilty. The defendant challenged the sufficiency of the indictment by demurrer and motion in arrest of judgment.

Freeman T. Knowles and Robert C. Hayes, for plaintiff in error.

William G. Porter, Asst. U. S. Atty. (Edward E. Wagner, U. S. Atty., on the brief), for the United States.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

AMIDON, District Judge (after stating the facts as above). Upon this record, the only question before us is whether the article is obscene, lewd, or lascivious, within the meaning of the statute. If it was fairly open to the construction of falling within either of these classes, it was the plain duty of the court to submit the question of its character to the jury. In all indictments under this statute there is a preliminary question for the court to say whether the writing could by any reasonable judgment be held to come within the prohibition of the law. That

is like the question of law in a case of negligence as to whether there is any substantial evidence of negligence. It leaves a wide field for the sound, practical judgment of the jury to determine the true character of the writing and its probable effect upon the mind of readers. Whenever reasonable minds might fairly reach different conclusions as to the character of the writing, it is the duty of the court to submit the question to the jury. Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; United States v. Bennett, 16 Blatchf. 342, Fed. Cas. No. 14,571; United States v. Davis (C. C.) 38 Fed. 326; United States v. Harmon (D. C.) 45 Fed. 418. Looking at the article in question, we entertain no doubt that its character and effect were questions for the determination of the jury. It glorifies fornication, and places it under the blessing of God. It designates the offspring of such intercourse as "love children," and declares that the "army of genius has been largely recruited from the ranks of illegitimates." Whether such language as this when presented to the minds of ardent youths and maidens would have a tendency to arouse impure and lascivious thoughts and desires, we should say was at least a question of fact for the determination of a jury. The defendant urges that his article contains a sincere discussion of an important social question, and that he was actuated only by the highest motives. He argued his case in person, and the impression which he made tended strongly to support this claim as to his motives; but such matters are immaterial in determining the issue here involved. His motive may have been never so pure; if the paper he mailed was obscene, he is guilty. There is no reference in the statute to the design or intent that a man has in depositing nonmailable matter in the mail. He cannot violate the law, even though his purpose be to accomplish good.

Our attention is called to United States v. Moore (D. C.) 104 Fed. 78. We cannot approve of the interpretation which that case puts upon the opinion of the Supreme Court in Swearingen v. United States, 161 U. S. 448, 16 Sup. Ct. 562, 40 L. Ed. 765. The first matter dealt with by the Supreme Court in its opinion is the charge of duplicity. The statute uses the terms "Obscene, lewd or lascivious," in the disjunctive. Following the usual practice of criminal pleading, the indictment charged the writing to be "obscene, lewd and lascivious," using the conjunctive form. The court held that this part of the statute defined but a single offense, and for that reason ruled that the indictment was not subject to the charge of duplicity. It is not true, however, as suggested in United States v. Moore (D. C.) 104 Fed. 78, that the opinion holds that a writing to come within the statute must be obscene, lewd, and lascivious. It is an elementary rule of criminal pleading that, where an offense may be committed by the use of either of several means, it is proper to charge those means in the conjunctive form, and the government establishes its case if it proves the defendant guilty as to either of them. Commonwealth v. Curtis, 9 Allen (Mass.) 266; Stevens v. Commonwealth, 6 Metc. (Mass.) 241; State v. Murphy, 17 R. I. 698, 24 Atl. 473, 16 L. R. A. 550.

The constitutional guaranties of religious freedom and freedom of the press have nothing to do with the statute here involved, for two reasons: (1) Those guaranties cannot be made a shield for viola-

tion of criminal laws which are not designed to restrict religious worship or a free press, but to protect society against practices that are clearly immoral and corrupting. Davis v. Beason, 133 U. S. 333, 10 Sup. Ct. 299, 33 L. Ed. 637. (2) The postal service is an agency of the federal government, and that government may exclude from its channels whatever in its judgment would be injurious to public morals. In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, 36 L. Ed. 93. From time immemorial it was an offense at common law to utter obscene language in public places, near a dwelling house, or in the presence of women. State v. Appling, 25 Mo. 315, 69 Am. Dec. 469; Barker v. Commonwealth, 19 Pa. 412; Rex v. Wilkes, 4 Burr. 2527; Commonwealth v. Holmes, 17 Mass. 336; Willis v. Warren, 1 Hilt. (N. Y.) 590. The purpose underlying this common-law offense was, of course, to protect the innocent and pure against having obscenity intruded upon their notice. The pervasiveness of our present mail system brings it directly within the reasoning of this common-law doctrine. If it may be used by the obscene, no mind or fireside is secure against their corruption. The utterance of obscene language upon the street is a mild offense in comparison with its dissemination by an organized effort through such a secret and pervasive agency as the postal service. The word "obscene," therefore, should be given in this statute fully as broad a significance as it had at common law. Language, of course, may be coarse, profane, and opprobrious without coming within the scope of that term. Shields v. State, 89 Ga. 549, 16 S. E. 66; Swearingen v. United States, 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765. The true test to determine whether a writing comes within the meaning of the statute is whether its language has a tendency to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands it may fall, by arousing or implanting in such minds obscene, lewd, or lascivious thoughts or desires.

The judgment must be affirmed.