## UNITED STATES v. JOURNAL CO., Inc.

(District Court, E. D. Virginia. June 5, 1912.)

1. POST OFFICE (§ 50*)—NONMAILABLE MATTER—PROSECUTION.

In a prosecution under Penal Code March 4, 1909, c. 321, § 211, 35 Stat. 1129 (U. S. Comp. St. Supp. 1911, p. 1651), for mailing nonmailable matter, whether the matter so mailed comes within the inhibited classes is ordinarily a question for the jury under proper instructions, but, if it is such that it could not by any reasonable judgment be held within the statute, it is the duty of the court to so determine as matter of law on a motion to quash, if the language is set out in the indictment or in a bill of particulars.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. § 50.*

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; United States v. Sprung, 110 C. C. A. 48.]

2. CONSTITUTIONAL LAW (§ 90*) — NONMAILABLE MATTER — PROSECUTION — FREEDOM OF THE PRESS.

The first constitutional amendment prohibiting the passage of any law abridging the freedom of the press cannot be invoked as a defense to a prosecution under Penal Code March 4, 1909, c. 321, § 211, 35 Stat. 1129 (U. S. Comp. St. Supp. 1911, p. 1651), for mailing a newspaper containing obscene, lewd, and lascivious or indecent matter.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 172; Dec. Dig. § 90.*]

3. POST OFFICE (§ 31*)—NONMAILABLE MATTER—NEWSPAPER PUBLICATIONS.

The sending through the mail of copies of a reputable newspaper containing accurate reports of testimony taken in open court during the progress of a judicial trial should not be held a criminal offense within Penal Code March 4, 1909, c. 321, § 211, 35 Stat. 1129 (U. S. Comp. St. Supp. 1911, p. 1651), unless the matter so published is clearly and palpably within the prohibition of the statute.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 50, 52; Dec. Dig. § 31.*]

Criminal prosecution by the United States against the Journal Company, Incorporated. On motion to quash indictment. Motion sustained.

L. L. Lewis, U. S. Atty., and R. H. Talley, Asst. U. S. Atty., both of Richmond, Va., for the United States.

S. S. P. Patteson and James H. Price, both of Richmond, Va., for defendant.

WADDILL, District Judge. This case grows out of the report of the trial of the celebrated Beattie Case, which took place in the county of Chesterfield, adjoining this city, during the late summer of last year. Henry Clay Beattie, Jr., was indicted, tried, and executed for the murder of his young wife. The crime was committed while on an automobile ride, at night, over a country road, near to their residence, some five weeks after the birth of their first child. The supposed motive for the crime was his infatuation for a young woman of dissolute character, with whom he had from time to time maintained improper relations. Both Beattie and his wife were prominent in the com-

munity, of large and most worthy family connections, and the murder and subsequent trial attracted wide-spread attention. In fact, it may be said to have been one of if not the most noted of the state's criminal trials, certainly so far as the publicity given to it throughout this and other countries was concerned. The leading papers of the United States teemed with accounts of the murder, and particularly of the proceedings and the trial, which lasted for weeks, and the interest in and excitement over the same was very great; the local newspapers devoting much space thereto for months.

The indictment contains two counts. The first charges that the defendant on a certain day unlawfully and knowingly did deposit in the post office at Richmond, Va., for mailing and delivery, a certain obscene, lewd, and lascivious publication, to wit, a publication known as the Richmond Evening Journal, Extra No. 5, dated August 28, 1911, the objectionable parts of said publication being headed "Beattie's Nemesis," and "Latter Part of Mother's Recital," said publication being alleged to be too obscene, lewd, and lascivious to be properly placed upon the records of the court. The only material difference between the first and second counts is that the latter charges the publication to be of an "indecent character." The defendant company moved to quash the indictment, and also demurred thereto, and, in obedience to a subsequent order of the court, entered upon the motion of the defendant (Rosen v. United States, 161 U. S. 29, 40, 16 Sup. Ct. 434, 480, 40 L. Ed. 606), a bill of particulars was furnished by the government to the defendant. Upon the filing of the bill of particulars, the defendant renewed its motion to quash, insisting that no offense as charged had been committed, and that the insertion of the articles complained of was clearly within the rights of the defendant as the publisher of a daily newspaper, and that plainly neither in the publication, distribution, or mailing of the same had there been any violation of the statute covered by the indictment respecting the improper use of the mails of the United States.

[1] The question of the character of the contents of the paper—namely, whether it comes within the inhibited class named in the statute—is one ordinarily to be determined by the jury under appropriate instructions from the court—that is, when there is such doubt as to the meaning and effect of the same, that persons would reasonably differ in respect thereto. But, on the other hand, if the publication complained of be such that it could not by any reasonable judgment be held to come within the prohibition of the law, then it becomes the duty of the court as matter of law to pass upon the same. Knowles v. United States, 170 Fed. 409, 411, 95 C. C. A. 579, and cases cited; United States v. Dempsey (D. C.) 188 Fed. 450. This right of the court to determine whether the particular writing or publication comes within the purview of the statute by appropriate instructions at the trial seems uncontroverted, and was clearly recognized in Swearingen v. United States, 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765, where the lower court instructed the jury as to the character of the paper, holding the same to be within the provisions of the statute, which the Supreme Court reversed, taking the contrary view of the paper. The

authority of the court to pass preliminarily upon the meaning and effect of language used in writings under indictments of this character, where the objectionable matter is not copied in the indictment, may be said not to be entirely free from embarrassment, since a demurrer, for instance, cannot be interposed for the purpose, because the alleged obscene matter is not a part of the record. Dunlop v. United States, 165 U. S. 486, 491, 17 Sup. Ct. 375, 41 L. Ed. 799. But this difficulty does not arise upon the motion to quash and the filing of the bill of particulars thereunder. A motion to quash is much broader and less technical, and is addressed to the sound discretion of the court (United States v. Rosenberg, 7 Wall. 580, 583, 19 L. Ed. 263); and in considering the same, with a view of reaching a just conclusion, matters dehors the record or not strictly a part of the record may be considered (Bishop, Crim. Pro. §§ 758, 759, 761, 762, 763). Every reason would seem to indicate that relief should be afforded preliminarily, as well as at the trial, in a proper case, since the accused is clearly entitled to make his defense by preliminary motion, as well as by plea of not guilty, and motion in arrest of judgment (Rosen v. United States, 161 U. S. 29, 30, 16 Sup. Ct. 434, 480, 40 L. Ed. 606, supra), and there would seem to be no good reason why the expense and delay of a trial should be incurred, if in the end the court would hold there was no case, because of the insufficiency of the writing or publication, as coming within the statute. The practice is, and should be, preliminarily to determine the legal sufficiency of the writing or publication as coming within the statute, where the question is timely and appropriately raised. United States v. O'Donnell (C. C.) 165 Fed. 218; United States v. Benedict (C. C.) 165 Fed. 221.

Coming to the consideration of the publication alleged to be improper to be deposited in and conveyed by mail, it will be found that the same is a verbatim copy of portions of testimony of two witnesses examined on behalf of the commonwealth in the criminal trial mentioned, one Dr. Franklin, and the other Mrs. Owens, the mother of Mrs. Beattie, who was murdered. A critical examination of the portions of the testimony published will show, that of the doctor, that he prescribed at the instance of Beattie for the young woman before referred to, and recommended her to take a trip to the mountains, and that he had prescribed for her some two years before for the same disease, and that she was reputed to be a woman of the town, and that of Mrs. Owens that she, at the instance of Mrs. Beattie, examined portions of the underclothing of Beattie, and found the same in a stained and discolored condition; this alleged objectionable testimony being under separate headlines, and printed in different portions of the paper.

Assuming that the publication in question ought to or had best been not made, and it goes without saying that the same was neither beneficial nor elevating in character, still it does not follow that in so doing a crime was committed by depositing the paper containing the article in the mails under the statute alleged to have been violated, in the light of the interpretation that has been placed upon that act by the Supreme Court and subordinate federal tribunals, and the language of the act,

197 F.—27

obscene, lewd, and lascivious, of an indecent character, etc., has invariably been held to mean the use of such words as would tend to deprave and corrupt the morals of those whose minds are open to such influences by arousing and implanting therein obscene, lewd, or lascivious thoughts and desires, relating to sexual impurity. Swearingen v. United States, 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765; United States v. Clarke (D. C.) 38 Fed. 500; United States v. O'Donnell (C. C.) 165 Fed. 218; Knowles v. United States, 170 Fed. 409, 412, 95 C. C. A. 579. So far from the language of the publication in question having the tendency mentioned, it should rather have the very contrary effect, especially when considered in the light of the sad and frightful consequences of the departure from the paths of virtue that befell those whose shortcomings were the subject of investigation.

[2] The defendant insists that the indictment in this case should not be sustained because the same is in derogation of its constitutional rights and privileges as the publisher of a daily newspaper. Amend. I, Const. U. S. This position cannot be successfully maintained as the constitutional guaranty of a free press cannot be made a shield from violation of criminal laws, which are not designed to restrict the freedom of the press, but to protect society from acts clearly immoral or otherwise injurious to the people. The postal service is one of the agencies of the federal government that it has the right under the Constitution to maintain, and under it, and the laws passed in pursuance thereof, as well as what may be termed its police authority respecting the subject, it has the right to determine the manner and method of conducting the same, and to exclude therefrom what may be considered injurious to public morals, and in so doing it neither restricts nor deprives the press of any constitutional privilege or right. It simply declines to become an agency for the distribution and circulation of printed and other matter which it considers of an objectionable character; and it is doubtless within the power of the government to withdraw or discontinue its postal system entirely. Ex parte Jackson, 96 U. S. 727, 736, 24 L. Ed. 877; In re Rapier, 143 U. S. 110, 133, 134, 12 Sup. Ct. 374, 36 L. Ed. 93; Public Clearing House v. Coyne, 194 U. S. 497, 506, 24 Sup. Ct. 789, 48 L. Ed. 1092; Knowles v. United States, 170 Fed. 409, 411, 95 C. C. A. 579, supra, and cases cited; Watson on the Constitution, 641, 648, 649, 650.

In ex parte Jackson, 96 U. S. 732, 24 L. Ed. 877, supra, Mr. Justice Field aptly remarked the difficulty attending the subject arises, not from the want of power in Congress to prescribe regulations as to what shall constitute mail matter, but from the necessity of enforcing them consistently with rights reserved to the people, of far greater importance than the transportation of the mail.

[3] While the right of Congress to determine what shall be carried in the mails is clearly and indisputably settled by the authoritites cited, it should nevertheless be said as respects publications of the character mailed in this case, namely, accurate contemporaneous reports of testimony taken in open court, during the progress of judicial trials, published in reputable journals (no case involving a similar state of facts

having been found by or brought to the attention of the court, though diligent search has been made by counsel), that only clear and palpable infractions of the statute should be noticed, since in the nature of things a large discretion must exist in the publisher, who generally acts through others, and most frequently under great stress in the matter of time, and it should not be lightly assumed either that a court would allow undue publicity to be given to, what occurred of the character in question in its presence, or that reputable newspapers would purposely wish to publish and disseminate through the mails what would be destructive of social order. The delicacy of the subject, the great desirability of maintaining the efficiency and purity of the mail, and the necessity that the freedom of the press shall at all times be preserved make it manifest that in considering this particular class of infractions, or supposed infractions, of the law, those having to administer the same should be actuated by the highest sense of right and justice to all, never losing sight of the fact that in carrying out the purposes of government the rights of the citizen and of the public, especially as defined and given by the Constitution, must be observed and respected, and that the guaranty of freedom of the press was granted, not alone because of the necessity therefor for its protection, but that thereby many of the dearest and most essential rights and privileges of the citizen might be assured and protected.

The contents of the publication in question being clearly not within the prohibitions of the statute, as hereinbefore shown, the motion to quash the indictment will be sustained.