UNITED STATES v. DAVIDSON.

(District Court, N. D. New York. August 30, 1917.)

1. POST OFFICE ⊂⊃31—NONMAILABLE MATTER—WRITING ON ENVELOPE.

Under Cr. Code, § 212 (Act March 4, 1909, c. 321, 35 Stat. 1129 [Comp. St. 1916, § 10382]), declaring an envelope containing any epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, or defamatory character, or calculated by its terms and obviously intended to reflect injuriously on the character or conduct of another, to be nonmailable, the depositing of a postpaid envelope addressed to "Mrs. W. Martin, Pros., Care Mrs. Freeborn, 14 Walworth Street, City," which abbreviation was known to the writer and to the recipient, as disclosed by the contents of the letter and of a subsequent letter, to mean "prostitute," and to charge immorality, but which abbreviation as to all others might have a proper and innocent signification, was not an offense, as it was not obviously intended to reflect injuriously upon another's character or conduct.

2. POST OFFICE ⊂⊃32 — NONMAILABLE LETTER — OFFENSE — "INDECENT" — "FILTHY"—"LASCIVIOUS."

Under Cr. Code, § 211 (Comp. St. 1916, § 10381), declaring every obscene, lewd, or lascivious, and every filthy letter of an indecent character unmailable, and defining the term "indecent" to include matter tending to incite arson, murder, or assassination, the mailing of an inclosed letter stating that, as soon as the recipient's bastard daughter was old enough to understand, the writer would write her an account of her prostitute mother, that recipient's husband was ashamed of her, and that the writer would write him about his wife, and that she was surrounded by a bunch of bastards and prostitutes, was an offense; the word "indecent" meaning grossly vulgar, offensive to modesty, obscene, lewd; the word "filthy" meaning morally foul, polluted, nasty, etc.; and the word "lascivious" meaning tending to excite voluptuous emotions, luxurious.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Indecent; Lascivious.]

3. INDICTMENT AND INFORMATION ⊂⊃129(1)—OFFENSES—JOINDER OF COUNTS.

A count in an indictment charging a violation of Cr. Code, § 211, by sending nonmailable matter in the form of a closed and directed letter, was properly joined with a count, under section 212, for depositing in the mail an envelope on which nonmailable matter was written, both of which acts were directed against the same person.

Minnie Davidson was indicted for sending a nonmailable letter through the mails, and for depositing in the post office an envelope the outside of which contained nonmailable matter. Demurrer to the first count overruled, and demurrer to the second count sustained, and that count dismissed.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Demurrer to indictment filed June 19, 1917, and which contains two counts, one for a violation of section 211 of the Criminal Code by sending nonmailable matter in the form of an inclosed and directed letter through the United States mails, April 21, 1917, and the other for a violation of section 212 of said Criminal Code by depositing in the post office of the United States, April 12, 1917, for mailing and delivery, an envelope and contents on the outside of which envelope, says the indictment, "was written an epithet, term, and language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, and defamatory character, calculated by the term, manner, and style of display to reflect injuriously upon the character and conduct of another, to wit, the character and conduct of one Mrs. ――――, the said envelope being hereto attached and made a part hereof," etc. Both of these, the letter and the envelope complained of, with contents, were directed to the same person, but mailed at different dates and at the same post office. The demurrer is to both counts, on the ground the same are not sufficient in law to charge a crime or offense, and that the two counts or charges are improperly united in the same indictment.

Dennis B. Lucey, U. S. Atty., of Ogdensburg, N. Y.
Benj. P. Wheat, of Saratoga Springs, N. Y., for defendant.

RAY, District Judge (after stating the facts as above). For the purposes of the demurrer and of determining the sufficiency of the indictment, assuming the facts stated to be true, on the 21st day of April, 1917, the defendant, at Saratoga Springs, N. Y., and within the Northern District of New York, deposited in the post office for mailing a letter inclosed in a post-paid envelope, duly addressed and directed to Mrs. ――――, and which letter or writing reads as follows:

"You have'nt stoped him from takeing the lady out have you? Just as soon as the bastard is old enough to understand I'll write her a full account of her prostitute mother and believe me I won't leave out anything not even the proof and just as soon as I know and address that will reach Fred without your geting it first I'll send him a letter that will tell him a few things about you that he don't know and if I know of your geting acquainted with any one I'll tell them about you to. It ought to be satisfaction enough to know that you are tied for life to a man that is ashamed of you and someone else is giving you just what you gave Mrs. Martin only you have to stand for it. She did not first—he asked her to marry him—you made him marry you. She had money and could do as she liked, you can't. She had decent friends and a name back of her—all you have is a bunch of prostitutes and bastards. So Ruby you keep on digging and stay out of sight and I'll keep telling your history to any one you get acquainted with also Fred and his friends."

[1] The second count charges the deposit in the post office April 12, 1917, of a post-paid envelope, with contents, on the outside of which envelope was written the following: "Mrs. W. Martin, Pros., Care Mrs. Freeborn, 14 Walworth Street, City." The letter or abbreviation, if it be such, "Pros.," followed the name of the addressee, and was placed about three-fourths of an inch therefrom. By reason of its location, it was calculated to attract attention. "Pros." was undoubtedly intended as an abbreviation, and when we read the letter inclosed and the subsequent letter sent the addressee, April 21, 1917, we must reasonably conclude what was intended by the one who addressed the envelope. The proof on the trial would undoubtedly show that the letters "Pros.," so written on such envelope, were intended by the writer thereof as an abbreviation of the word "prostitute," but with-

out such knowledge gained by reading the two letters the reader of such words and letters "Pros." on such envelope would have no means of knowing or forming a correct conclusion as to their meaning, except such as is warranted by reference to our dictionaries of the English language. The Century Dictionary defines "Pros." as "an abbreviation of prosody," and also "Pros." as "a prefix in words of Greek origin or formation, meaning 'to,' 'towards,' 'before,' etc." This is familiar knowledge to the close student of English and also to those who have studied the Greek language. Of itself, "Pros." does not suggest, even remotely, anything either indecent, lewd, lascivious, obscene, libelous, scurrilous, or of a defamatory character. Taking and applying the ordinary and natural meaning to this abbreviation found on this envelope, and the addressee was described as a singer, or speaker, with modulation of voice, especially as to tone or accentuation, or as one versed in the science or quantity of syllables and pronunciation as affecting versification. See "Prosody," Century Dictionary. The di-derivatives of napthaline are "sometimes distinguished by prefixes, as 2.6 amplin, 2.7 pros.," etc. See Webster's New International Dictionary.

The question then arises, does it constitute an offense against the statute (section 212, Criminal Code) to place on an envelope an abbreviation known to the writer and to the recipient of the inclosed letter, as disclosed by the contents of such letter to the recipient thereof and to no one else, to charge immorality, etc., but which abbreviation to all others would have only a proper, innocent, and even flattering signification? I think not. This envelope is attached to, is referred to in, and forms a part of, the second count of the indictment and speaks for itself. The letter inclosed in such envelope is neither attached to, nor referred to in, the indictment. There is no allegation in the indictment that the abbreviation "Pros." had other than its ordinary meaning as generally understood and defined in the dictionaries, or that it had any other meaning as understood by the writer and by the person to whom addressed. While the indictment charges in count 2 that the words or letters "Pros." on the envelope were of an indecent, lewd, lascivious, obscene, libelous, scurrilous, and defamatory character, etc., the envelope itself, which forms a part of this count of the indictment, shows that they were not of that character, but innocent in and of themselves, and as generally understood and according to their ordinary and natural and well-defined meanings. Section 212 of the Criminal Code (U. S.) reads as follows:

"All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any delineations, epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter, and shall not be conveyed in the mails nor delivered from any post-office nor by any letter carrier, and shall be withdrawn from the mails under such regulations as the Postmaster-General shall prescribe. Whoever shall knowingly deposit or cause to be deposited, for mailing or delivery, anything declared by

this section to be nonmailable matter, or shall knowingly take the same or cause the same to be taken from the mails for the purpose of circulating or disposing of or aiding in the circulation or disposition of the same, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both."

I think that, to be nonmailable, the delineations, epithets, terms, or language on the envelope must, of itself or of themselves, be of an indecent, lewd, lascivious, obscene, libelous, scurrilous, defamatory, or threatening character, or of themselves calculated, by the terms or manner or style of display thereon, and *obviously* intended, to reflect injuriously upon the character or conduct of another. It would seem that a statute of this character, to prevent the abuse or improper use of the United States post office establishment and mails, is intended for the protection of the government and general public and not the redress of private grievances. In United States v. Jarvis (D. C.) 59 Fed. 357, the address on the envelope was "Room 32, Pease House, Front St., City. The Notorious;" and it was held that this was not defamatory per se, and not calculated to reflect injuriously on any one, whether referring to the addressee of the letter and envelope or to the Pease House or Hotel. The judge said:

"From the style of the superscription it is not obvious that the words 'The Notorious' were intended to characterize the person addressed, or any person. On the contrary, the Pease House would appear to have been intended to be designated as 'The Notorious.' But, assuming that the epithet applies to the person addressed, the words themselves do not necessarily reflect injuriously. Applied to a person without notoriety, they are meaningless. A man may be a notorious wit. Those who possess and exercise superior powers as orators, singers, or actors gain celebrity, and the holders of exalted positions are referred to as noted persons. Applied to persons of such character, the epithet would be considered by those acquainted with their reputations as being in bad taste, but not as implying any bad imputation."

So here the abbreviation "Pros." is not *obviously* intended to reflect injuriously upon the character or conduct of any person or persons. The injurious and slanderous meaning concealed from the general public and unknown to it, and only known to the writer and recipient of the envelope and inclosed communication, cannot bring the case within the statute quoted.

The second count of this indictment is insufficient to charge an offense, and as to same the demurrer is sustained and the count dismissed.

[2] Returning to count 1 of the indictment, we have a private letter sent under seal through the post office to the addressee, and which letter says, referring to some one's child, "Just as soon as *the bastard* is old enough to understand, I'll write her a full account of her *prostitute* mother, and," etc. Later it refers to the husband, and states he is ashamed of this mother; and, later, referring evidently to the first wife, says: "*She* had decent friends and a name back of her. All you have is a bunch of prostitutes and bastards." This communication starts off with, "You haven't stopped him from taking the lady out have you? It is impossible to tell certainly who "the lady" re-

ferred to is or who "him" is. The language I have quoted plainly imputes want of chastity to a woman, the addressee I think, by stating her child is a bastard, a child begotten and born out of wedlock, and that the mother is a prostitute, one who gives herself to promiscuous sexual intercourse. This, if published, is slanderous and libelous. There is nothing in the communication that would incite or excite sexual desires or passions in the reader or tend to. Is it obscene, lewd, or lascivious? Is it a *filthy* letter or writing of an indecent character? Is the tendency of this letter to deprave or corrupt the minds of those open to lascivious influences? Is there any chance that reasonable men would hold it obscene, lewd, or lascivious? It has been held that this section of the law applies to a postal card imputing illicit sexual intercourse to a person *other than the addressee*. United States v. Pratt, 2 Am. L. T. Rep. (N. S.) 238, Fed. Cas. No. 16,082. It has been held also that the section does *not* apply to a sealed letter charging the addressee with adultery with her son-in-law. United States v. Wroblenski (D. C.) 118 Fed. 495. In this case the letter charged the addressee with having committed adultery with her son-in-law. This, of course, charged sexual impurity, but it was held it could not in any way corrupt the mind or morals of the recipient. If the decision of that case was correct, then this letter in the instant case is not within the statute cited, as it charges the recipient with being the mother of a bastard, and a prostitute, and with having a bunch of prostitutes and bastards about her as her only backers and associates. The letter would excite the anger and indignation and resentment of the recipient rather than have a corrupting influence on her or any one who might read it. Clearly, it would not excite sexual desires or passions. In the act of July 12, 1876 (19 Stat. 90, c. 186), the word "letter" was not included, and it was held in United States v. Chase, 135 U. S. 255, 10 Sup. Ct. 756, 34 L. Ed. 117, that an obscene, lewd, and lascivious *letter* was not covered by the word "writing," and hence was not within the statute. In 1888 the statute was amended (Act Sept. 26, 1888, c. 1039, 25 Stat. 496) to expressly cover a letter of the character indicated; and in Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023, it was expressly held that a private, sealed letter, after the amendment of 1888, containing obscene, etc., matter, is within the statute. The court held:

"The mailing of a private sealed letter containing obscene matter in an envelope on which nothing appears but the name and address is an offense within the statute."

In Swearingen v. United States, 161 U. S. 446, 16 Sup. Ct. 562, 40 L. Ed. 765, repeatedly cited and approved, it was held that "lewd, lascivious, and obscene" and other writing "of an indecent character," signify "that form of immorality which has relation to sexual impurity, and have the same meaning as is given them at common law in prosecutions for obscene libel." The court also said:

"The offense aimed at, in that portion of the statute we are now considering, was the use of the mails to circulate or deliver matter to corrupt the morals of the people."

Amongst the things contained in the article considered and under examination in that case was the following:

"This black-hearted coward is known to every decent man, woman, and child in the community as a liar, perjurer, and slanderer, who would sell a mother's honor with less hesitancy and for much less silver than Judas betrayed the Saviour, and who would pimp and fatten on a sister's shame with as much unction as a buzzard gluts in carrion. He is a contemptible scoundrel and political blackleg of the lowest cut. * * * He has been known as the companion of negro strumpets and has reveled in lowest debauches. * * * He is lower, meaner, filthier, rottener than the rottenest strumpet that prowls the streets by night."

Here was a plain charge of sexual impurity with negro strumpets. Of all this the court said:

"Referring to this newspaper article, as found in the record, it is undeniable that its language is exceedingly coarse and vulgar, and, as applied to an individual person, plainly libelous. But we cannot perceive in it anything of a lewd, lascivious, and obscene tendency, calculated to corrupt and debauch the mind and morals of those into whose hands it might fall."

The statute we are considering, so far as material here, reads:

"Every obscene, lewd, or lascivious, and every filthy book, pamphlet, picture, paper, *letter*, writing, print or other publication *of an indecent character*, * * * is hereby declared to be nonmailable matter and shall not be conveyed in the mails," etc.

In Knowles v. United States, 170 Fed. 409, 95 C. C. A. 579, it was held that the "true test to determine whether a writing" is nonmailable under the section as it now reads "is whether its language has a tendency to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands it may fall, by arousing or implanting in such minds obscene, lewd, or lascivious thoughts or desires." Of the language used in the writing complained of, the court said:

"Looking at the article in question, we entertain no doubt that its character and effect were questions for the determination of the jury. It glorifies fornication, and places it under the blessing of God. It designates the offspring of such intercourse as 'love children'; and declares that the 'army of genius has been largely recruited from the ranks of illegitimates.' Whether such language as this, when presented to the minds of ardent youths and maidens, would have a tendency to arouse impure and lascivious thoughts and desires we should say was at least a question of fact for the determination of a jury."

This is quite different from berating a woman for being a prostitute and the mother of a bastard child and threatening to spread the information.

In United States v. Wyatt (D. C.) 122 Fed. 316, the court (Bradford, D. J.), in charging the jury, said:

"A letter need not be obscene, lewd, or lascivious in each of its sentences or in all its parts in order to be an obscene, lewd, or lascivious letter within the meaning of the statute. If it be obscene, lewd, or lascivious in one or more parts or sentences or portions of sentences it is an obscene, lewd, or lascivious letter within the meaning of the statute. The contents of a letter may be coarse, vulgar, and indecent, and yet the letter not be obscene, lewd, or lascivious within the meaning of the statute. It does not follow, from the mere fact that the contents of a letter are coarse, vulgar, and indecent, that

such letter must be obscene, lewd, or lascivious within the meaning of the statute. The words obscene, lewd, and lascivious, as used in the statute, have reference to that form of immorality which relates to sexual impurity; and a sealed letter, to be obscene, lewd, and lascivious, must contain matter offensive to the sense of chastity, and naturally calculated or tending to suggest to or create in the mind of the addressee of the letter libidinous thoughts, or to excite or give rise to sexually impure desires in the addressee. Such a letter must have a tendency to deprave the moral senses by suggesting or appealing to sexual lust, and the objectionable language must not have been used in the proper exercise of professional duty or of any legitimate calling rendering the use of such language necessary."

In both United States v. Benedict (C. C.) 165 Fed. 221, and United States v. O'Donnell (C. C.) 165 Fed. 218, the rule is reiterated that the sealed letter mailed must contain language which will have or which may have "an immoral effect, in a sense relating to sexual impurity, upon those into whose hands the writing may come." The communication in the instant case is vulgar, abusive, insulting, and one calculated to arouse angry passions and resentment, but not sexual passions or desires. It amounts to nothing more than an accusation in writing that the addressee is a prostitute and the mother of a bastard child, and is surrounded by prostitutes and bastards, and this is accompanied by a threat to inform people generally of such addressee's history and true character, and thereby ruin her socially and in the estimation of "Fred," her husband. The language is not within the definition of obscene, lewd, or lascivious or "filthy letter of an indecent character," unless every letter to another accusing such person of sexual immorality is filthy and "of an indecent character," within the meaning of "filthy" and "indecent' 'as used in the statute. In the ordinary meaning of "indecent," this letter is within the statute. See Century Dictionary, where "indecent" is defined as meaning "unbecoming, unseemly, violating propriety in language, behaviour, etc.; grossly vulgar; offensive to modesty; obscene, lewd." But it must also be a "filthy" letter, and filthy means "morally foul; defiled by sinful practices; polluted; containing or involved in filth; foul, dirty; noisome; nasty; low; scurvy; contemptible; mean." And "filth" is defined as "anything that soils or defiles; foul offensive matter; anything that sullies or befouls the moral character; pollution; defilement."

The case of Dunlop v. United States, 165 U. S. 486, 500, 501, 17 Sup. Ct. 375, 41 L. Ed. 799, throws little light on the instant case, except to accentuate the construction of the statute that, to be obscene, lascivious, lewd, or *indecent,* the letter or publication sent through the mails must be calculated with the ordinary reader thereof to deprave him, deprave his morals, or lead to impure purposes in the direction of impure sexual relations or acts. The court said (165 U. S. 500, 501, 17 Sup. Ct. 380, 41 L. Ed. 799):

"Now, what is [are] obscene, lascivious, lewd, or indecent publications is largely a question of your own conscience and your own opinion; but it must come—before it can be said of such literature or publication—it must come up to this point; that it must be calculated, with the ordinary reader, to deprave him, deprave his morals, or lead to impure purposes. * * * It is your duty to ascertain, in the first place, if they are calculated to deprave the morals; if they are calculated to lower that standard which we regard as

essential to civilization; if they are calculated to excite those feelings which, in their proper field, are all right, but which, transcending the limits of that proper field, play most of the mischief in the world."

"The construction placed by counsel upon this is that it practically directed the jury that obscene literature was such as tended to deprave the morals of the public *in any way whatever*, whereas the true test of what constitutes obscene literature is that which tends to deprave the morals in one way only, namely, by exciting sexual desires and lascivious thoughts. It is not, however, the charge given by the court that was too broad, but the construction put upon it by counsel. The alleged obscene and indecent matter consisted of advertisements by women, soliciting or offering inducements for the visits of men, usually 'refined gentlemen,' to their rooms, sometimes under the disguise of 'baths' and 'massage,' and oftener for the mere purpose of acquaintance. It was in this connection that the court charged the jury that, if the publications were such as were calculated to deprave the morals, they were within the statute. There could have been no possible misapprehension on their part as to what was meant. There was no question as to depraving the morals in any other direction than that of impure, sexual relations. The words were used by the court in their ordinary signification, and were made more definite by the context, and by the character of the publications which had been put in evidence. The court left to the jury to say whether it was within the statute, and whether persons of ordinary intelligence would have any difficulty in divining the intention of the advertiser."

The indictment in that case charged that the matter was obscene, lewd, lascivious, and *indecent*. It is seen that the court adopted the construction of the statute that the matter must be calculated to deprave the morals in the direction of impure sexual relations.

The case of United States v. Journal Co. (D. C.) 197 Fed. 415, 417, is apt and instructive here. In that case, taking advantage or making use of the evidence given in court on the trial of one Beattie for the murder of his wife, a crime alleged to have been incited by his infatuation for a woman of bad and immoral character, the defendant published and circulated through the mails extracts from the evidence, including that of a doctor who had treated this woman for a foul sexual disease, and who as a witness described her physical condition, and also the evidence of another witness who had examined the underclothing of Beattie, and described its befouled condition, all of which evidence was given to show, and all of which tended to show, impure and improper sexual relations between Beattie and this woman, and show a motive for the crime of which he was accused. The language of this publication, as matter of course and of necessity, was foul, nasty, and indecent, and related plainly to sexual impurity and acts; but the court said, in substance, that while the publication and circulation had best not been made, still the publication and reading of same, instead of tending to deprave and corrupt the minds and morals of readers whose minds are open to such influences by arousing and implanting therein obscene, lewd, and lascivious thoughts and desires relating to sexual impurity, should rather have the very opposite or contrary effect. The indictment was quashed on this and other grounds. The cases seem to tenaciously adhere to the doctrine that one class only of writings and publications are forbidden the mails by this section, viz. those which have a tendency to excite the sexual feelings and desires and which tend to deprave the morals of the reader in that

direction. The Supreme Court of the United States has adopted this view of the statute, and I see but one course for the lower courts to follow. It is not enough that the letter or publication merely relate to sexual matters and illicit sexual relations, but it must be clothed in language and contain expressions which, with reasonable persons, tend to excite the sexual desires or passions or corrupt the morals of the reader in that direction. Can it reasonably be said that language in a letter charging a woman with being a prostitute, and surrounded by prostitutes and bastards, has any such tendency with reasonable persons of normal minds and constitutions? There are men undoubt-edly to whom the mere mention of a prostitute as such would sug-gest libidinous thoughts and sexual desires, but such men, if there be such, are abnormal. The normal mind revolts at the word "prosti-tute" as applied to a woman. The normal man and woman are repel-led and disgusted, not attracted, by such language and threats as are contained in the letter now under consideration. It is objectionable to the moral sense of any decent-minded person of intelligence to read such communications or to be informed that such communications are written, except in cases of necessity and to serve some good purpose. Atwell's Federal Criminal Law (2d Ed.) considers this statute, and the cases (Atwell's Fed. Criminal Law [2d Ed.] pp. 148–156), and with other things the author says (page 150):

"The courts all along have almost universally construed section 3893 to be directed against such impurity as related to sexual matters and gave rise to libidinous thought. If the addition of the word 'filthy' in the new statute broadens the construction, it will be welcome indeed, because, under the present authorities, the old section permitted a perfect sluice of vulgarities and coarseness and obscenity to pass through the United States mails un-challenged and unprosecuted. For instance, the courts have held that the use of the word 'son-of-a-bitch' in a sealed envelope is not an offense. It would seem that under the dictionary definition of the word filthy, as quoted above, the law would now comprehend the use of the word 'bitch' and the phrase 'son-of-a-bitch' and 'whore' and 'prostitute' and a great many others that are used in an abusive way toward the recipient of the mail. This, however, remains to be seen, and the construction of the new statute will be welcomed if it now inhibits the use of such expressions."

In United States v. Dempsey (D. C.) 188 Fed. 450, 451, the court, re-citing the language of the letter complained of, said:

"The letter was mailed in this district, and addressed to a young lady in the state of Mississippi, and was as follows: 'Do it a little Club. I kiss and hug all the girls when they get initiated. Need no light in hall. President. Professional hand-holder. Nights only.' Assuming, without deciding, that the contents of the letter were not of that character which would make it nonmailable, in view of the construction of section 3893, R. S. (U. S. Comp. St. 1901, p. 2658), in Swearingen v. United States, 161 U. S. 446, 451, 16 Sup. Ct. 562, 40 L. Ed. 765, that would still not be conclusive of this case, as the Penal Code amends that statute very materially, by adding, after the words 'every obscene, lewd and lascivious,' the words, 'and every filthy' book, pamphlet, picture, or letter."

This language is so clearly suggestive of sexual impropriety, and is so clearly calculated and designed to suggest and awaken sexual thoughts and desires with those whose minds are that way inclined, that it comes within the definition or construction placed on the stat-

ute by the Supreme Court. It is not filthy, but clearly lascivious, which means, "tending to excite voluptuous emotions; luxurious," as, "He capers nimbly in a lady's chamber to the lascivious pleasing of a lute"—(Shak. Rich. III). "Lasciviousness" means "lascivious desires or conduct; lewdness; wantonness; lustfulness; looseness of behavior." See Century Dictionary.

If the language quoted and used in the Dempsey Case does not plainly suggest "looseness of behaviour" under circumstances and conditions calculated to awaken and excite libidinous or sexual thoughts and desires, it is difficult to conjure up words which would. It is not an accusation, but a solicitation and suggestion of a sexual nature, calculated to excite sexual emotions and desires. The cases have been substantially uniform (I am not informed of any exception) in holding that a "filthy" writing or letter, as described in the statute, must be "filthy" in its relation or reference to the sexual relations or desires. There are many filthy writings which have no reference to that subject, and I find no case which brings such writings or communications within the statute. In United States v. Martin (D. C.) 50 Fed. 918, it was held that a letter or communication, however chaste the language, attempting to secure, or written for the purpose of securing, an assignation for improper sexual relations, is within the statute. This is not because of the use of the word "filthy" in the statute. To the same effect is United States v. Moore (D. C.) 129 Fed. 159.

One paragraph of section 211 of the Criminal Code of the United States remains to be considered. In the act of May 27, 1908, c. 206 (35 Stat. 416), entitled "An Act making appropriations for the service of the post office department," etc., there was placed the provision (amending section 3893, R. S. of the United States [Comp. St. 1916, § 10381], by adding same), "And the term 'indecent' within the intendment of this section shall include matter of a character tending to incite arson, murder or assassination." This, of course, broadened materially the meaning of "indecent" as used in section 3893, R. S., from which section 211 of the Criminal Code was taken. March 4, 1909, the Criminal Code, "An act to codify, revise and amend the penal laws of the United States" (35 Stat. 1088, c. 321), was enacted, taking effect January 1, 1910, and this provision of section 3893, R. S., placed there by the amendment of 1908, was omitted from section 211 of the Penal Code (see page 1129), but was restored, so to speak, or added thereto, by the act of March 4, 1911, entitled "An act making appropriations for the service of the post office department," etc. (36 Stat. pp. 1327, 1339, c. 241), where we find the following:

"Sec. 2. That section two hundred and eleven of an act of Congress entitled 'An act to codify, revise, and amend the penal laws of the United States,' approved March 4, 1909, be amended by adding thereto the following: And the term 'indecent' within the intendment of this section shall include *matter of a character tending to incite arson, murder, or assassination.*" (Italics mine.)

This paragraph is now a part of section 211 of the Criminal Code. See volume 10, U. S. Comp. St. 1916, Annotated, § 10381, p. 12762.

The indictment in the instant case charges that the letter complained

of and made a part of the indictment and above quoted, "was obscene, lewd, lascivious, and filthy *and otherwise indecent."* (Italics mine.) The words "otherwise indecent" in the indictment are very general, and do not specifically allege that the terms, accusations, and threats contained in such letter are of a character tending to incite either murder or assassination. There is no direct charge that the words of this letter as a whole, or as to any part, are of a character tending to incite murder, or that there was such an intent, but still it is charged that while obscene, etc., they were "otherwise indecent," and "indecent" may include matter of a character tending to *incite* murder or assassination. "Incite," in this connection, means "move to action"—that is, move to "murder"; to "stir up"—that is, "stir up murder"; "to arouse" —that is, "arouse to murder" or "assassination." Such words and epithets as are contained in the letter in question here might sufficiently stir the anger and indignation, especially when accompanied by such threats as accompany them, to induce murder; but are they of a character tending to "move to action" by committing murder, or "stir up" the person addressed to commit murder? In Long v. State, 23 Neb. 33, 36 N. W. 310, 315, in construing the charge of the trial judge in which he used the words "requested, advised, and incited," it was held "incited" meant the same in a criminal case, or *that* criminal case, as "aid, abet, or procure." Is not that the proper construction here, and must not the words or phrases used be such as naturally tend to suggest and aid or abet murder or assassination? If not, almost any threat in a letter which stirs or tends to stir up angry passions and resentment is "matter of a character tending to incite murder or assassination," as these words are used in this statute. I think it would be a strained and unwarranted construction to hold that the communication complained of, taken as a whole, is of a character tending to incite either murder or assassination. No jury would be justified in so finding. When the language of a writing or letter is capable of two constructions or meanings, one within and the other without the statute, it may be for a jury to say whether or not it offends against the statute and is nonmailable; but when the meaning is plain and unambiguous, and there is no doubt as to the meaning, I do not think a case for a jury is presented, unless the writing is either obscene, lewd, lascivious, or so filthy as to be of an indecent character, as heretofore defined, in the opinion of the court. Clearly, the court must construe the statute and its meaning, and define the meaning of each of the words therein; and if the article complained of as a whole and in each of its expressions is not within it, no case for the jury is presented. In this case the application of the word "bastard" to the child referred to and the word "prostitute" to the mother, and a characterization of all the friends and associates of the mother as a "bunch of prostitutes and bastards," suggests plainly that the mother has had improper sexual relations with some man, and given birth to a child out of wedlock, and also that the mother gives herself for hire to improper sexual intercourse, and also associates and surrounds herself with those given over to the same immoral and vicious practices. Is it for the court to say, as matter of law, that all

this would not suggest libidinous thoughts and sexual desires with those readers into whose hands it might come, or would not tend to deprave the morals of such readers in that direction? If not, then a case is presented for the consideration and decision of a jury. This letter not only brands this one woman as a prostitute, but the female friends back of and about her as of the same class, and in this way and to that extent indicates where such characters may be found. However, it is not an advertisement and a solicitation of business, but an out and out accusation of wrongdoing on the part of the woman, accompanied by the threat to publish her moral laxity and infamy to all new acquaintances and thus alienate them from the addressee. It is not alluring or enticing or calculated or intended to be, but repellant to all well-disposed persons. The reading of this letter, instead of debasing the morals of the decent and correct and normal minded, would have the very opposite effect. However, it would direct the thoughts of all readers to the subject of illicit sexual relations, but to what extent it would operate on the morals of the reader is a matter of conjecture. When Congress extended the meaning of "indecent" to embrace words or matter of a character tending to incite arson, murder, or assassination, it was acting with knowledge of the decisions of the courts, and it seems evident it would have so broadened the meaning as to include threats and accusations of the character contained in this letter if it had intended to exclude them from the mails as nonmailable matter. I am not content with the restricted construction placed by the courts on the language of section 211 of the Criminal Code, where it adds to the words "every obscene, lewd, or lascivious," the words "and every filthy * * * letter, writing * * * of an indecent character," as it seems to me it was not the purpose of Congress to restrict nonmailable letters to written or printed matter which relates to sexual acts and conduct and matters which will excite or tend to excite libidinous thoughts and sexual desires or debase and degrade the mind and morals of the reader in the direction indicated.

In Tyomies Pub. Co. v. United States (6th circuit) Knappen, C. J., Denison, C. J., and Day, D. J. (211 Fed. 385, 128 C. C. A. 47), the indictment related to certain pictures, accompanied by certain words printed above and below, to an extent characterizing the picture. The Circuit Court of Appeals said:

"Section 3893 of the Revised Statutes did not contain the words 'and every filthy.' which were inserted at the time of the enactment of the Penal Code in 1909. It was plainly the purpose of Congress, in adding these words, to enlarge the scope of the statute so as to cover a class of publications that were not included in the old section. United States v. Dempsey (D. C.) 188 Fed. 450. The trial judge submitted the issue as to whether or not this picture was filthy to the jury, saying: 'By the term "filthy" is meant what it commonly or ordinarily signifies; that which is nasty, dirty, vulgar, indecent, offensive to the moral sense, morally depraving and debasing.'"

Does not this decision, while not binding, require this court to have submitted to the jury on a trial the question whether or not this letter was "filthy" within the meaning of the statute? The language is clearly "vulgar" and "offensive to the moral sense" in matters relating to illicit sexual relations, and is therefore of the same general char-

acter as is written language prohibited the mails and covered by obscene, lewd, and lascivious. I think the language "filthy * * * letter * * * of an indecent character" brings within the statute a communication sent to another through the mails which would not be covered by the preceding words obscene, lewd, and lascivious if it be a filthy letter of an indecent character, even though it is not of a character which would promote or excite sexual desires and emotions.

[3] I am not at liberty to set up my opinion on this subject against the great weight of authority, especially that of the Supreme Court. There is no doubt the two counts are properly united in the one indictment. The acts of defendant were directed against the one person; were of the same general nature, sending nonmailable matter (so alleged) through the mails at the post office named; and were clearly closely connected in point of time. For the reasons given, on the whole, I think this indictment good as to the first count and bad as to the second count. There will be an order sustaining the demurrer as to and dismissing the second count, and overruling the demurrer as to the first count.