PEOPLE, PLAINTIFF AND APPELLANT, v. SIERRA, DEFENDANT
AND APPELLEE.

APPEAL from the District Court of San Juan in a Prosecution
for Violation of Section 283 of the Penal Code.

No. 1390.—Decided December 22, 1919.

OBSCENITY—INFORMATION—MOTIVE.—When an information found under section
283 of the Penal Code sets forth verbatim a writing whose tendency is to
corrupt the morals or suggest lascivious thoughts, it is error to sustain a
demurrer alleging want of facts sufficient to determine a public offense on
the ground that the language used was not obscene. The motive and pur-
pose of the writer are not involved in the issue.

The facts are stated in the opinion.

Messrs. *José N. Quiñones* and *Salvdaor Mestre, Fiscales,*
for the appellant.

Mr. *Celestino Iriarte, Jr.,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Pedro Sierra was charged in each of two separate in-
formations with violation of section 283 of the Penal Code
through the lewd and wilful publication of two obscene ar-
ticles, each entitled "From Sunday to Sunday" and appear-
ing in a local weekly called *El Diluvio.*

The information in each case sets forth verbatim certain
portions of the writing therein referred to and in both cases
the district court sustained a demurrer for want of facts
sufficient to constitute a cause of action.

The theory of the demurrer in each instance was that
the language quoted in the information is not obscene and
that the writing shows on its face that the motive of the
writer was not lascivious and that the purpose of the article

was not to excite in the minds of those into whose hands it might fall lewd thoughts or sexual desire, but rather, in a sharp though refined fashion, to criticize the attitude of the Attorney General of Porto Rico toward violations of Chapter 7 of the Penal Code, and at the same time to present to society the defects existing in its organization and the evils and vices of prostitution and adultery.

"While it is not possible to define obscenity with any degree of practical certainty the test ordinarily followed by the courts in determining whether a particular publication or other thing is obscene within the meaning of the statutes is whether the tendency of the matter charged as obscene is to deprave and corrupt those whose minds are open to such immoral influences and into whose hands a publication or other article charged as being obscene may fall. Thus it has been held that where a publication or other article suggests to the young of either sex, or even to persons of more advanced years, thoughts of an impure and libidinous character it is obscene. Another test of obscenity is that which shocks the ordinary and common sense of men as an indecency. The true test of verbal obscenity is whether the particular language employed is calculated to corrupt morals or excite libidinous thoughts, and not whether the words themselves are impure. Chaste words may be made the medium of expressing obscene thoughts, while, on the other hand, gross terms of the vilest sort may be used with the result that they cause only disgust at and contempt for, the one who uses them." 8 Ruling Case Law, 312.

The motive and purpose of the writer are not involved in the question before us. 8 Ruling Case Law, 313. But even otherwise, the purity of such motive and purpose is by no means so apparent from the face of the article in question as the language of the demurrer would suggest.

In *Knowles* v. *United States,* 170 Fed. 409, the court said of the writing there under consideration, "It glorifies fornication and places it under the blessing of God." While we would not be understood as coinciding with the view there taken of the facts in that case, we do not hesitate to affirm that the article so characterized, as compared with either of

the compositions involved herein, seems a paragon of chastity both in thought and in style.

In the case at bar defendant not only finds "something of the divine" in certain types of adultery, but, muckrake in hand and with a persistent purpose worthy of a better cause, explores encyclopedia, art, literature, mythology, philology and history, both biblical and profane, in order to accumulate his diminutive dung-hill of precedent for the illicit indulgence of sexual instinct. That, with some degree of literary skill, vice is thus paraded in the vestments of virtue, adorned with seductive anecdote, bolstered up by pseudo scientific research and veiled in facile ingratiating fluency of diction, is not an attenuating circumstance.

"The most obscene, lewd and lascivious matter may be conveyed by words which in themselves are not of an obscene character. The question is as to the idea which is conveyed in the words that are used, and that idea characterizes the language." *United States* v. *Bennet*, Case No. 14571, 24 Fed. Cases, 1093.

"The law has relation as well to the subject as to the dress. Both the subject and its treatment must be free from obscenity. The most debasing topic may be presented in the choicest language. In such garb it is the more dangerous. Impure suggestion clothed in pleasing attire allures and corrupts when bald filth would disgust and repel." *United States* v. *Smith*, 45 Fed. 478.

In matters of this kind courts cannot be too careful to avoid any puritanical tendency towards condemnation of what merely fails to meet the requirements of individual literary taste or to measure up to personal standards of morality and mental hygiene. Perhaps it was some such feeling on the part of the district judge that inclined him to sustain the demurrer, preferring to err, if at all, on the side of a broad and tolerant attitude. But the plain purpose of the statute and the established rules of law cannot be disregarded in determining questions of this sort.

After careful consideration of the question in this spirit and notwithstanding our reluctance in arriving at a conclu-

sion contrary to that reached by the court below, we are constrained to hold that the articles in question are clearly obscene and therefore that the information does charge an offense.

The order appealed from must in each instance be reversed and the case remanded.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.