UNITED STATES v. LAMKIN.

(Circuit Court, E. D. Virginia. April 8, 1896.)

No. 755.

1. VIOLATION OF POSTAL LAWS—OBSCENE LETTERS—CONSTRUCTION OF STATUTE.
   If an act of congress denounces the mailing of letters containing obscene language (Rev. St. § 3893, as amended in Supp. Rev. St. p. 621), and does not also denounce the mailing of letters written for an obscene purpose, then an indictment founded on letters containing no obscene language, and charging only obscenity of purpose, cannot be maintained.

2. SAME.
   There is no federal statute providing a punishment for the mailing of letters which are free from lewd and indecent language, expressions, or words, although they may have been written for the purpose of seduction, or to obtain meetings for immoral purposes.

This was an indictment against Zephania G. Lamkin, for violating the statute prohibiting the mailing of obscene letters (Rev. St. § 3893, as amended by Supp. Rev. St. p. 621). The indictment was found in the district court, from which it was transferred to this court. The case was heard on a motion to quash.

The following are the letters on which the indictment was founded:

Letter No. 1.
                                                    Monday, 6:30 p. m.
Miss Lena: Why did you fail to meet me as you promised? See me Tuesday at one and a half at corner Twenty-Third and Grace, and explain to me.
                                                    Your Friend.

Letter No. 2.
Miss Lena: Don't get angry with me for writing to you, but I think you have treated me badly after you promised to meet me, and failed to do so. If you had not wanted to meet me, you could of told me so, and all would of been well. I have been a friend to you, and will still be so, but I want you

to see me and explain or write to me and tell me the reason you did not keep your promise to meet me. You will please answer this note.

Twenty-Third Street Friend.

To A. Goodfellow, care of T. B. Williams, corner Twenty-First and Marshall streets.

March 13, 1896.

If you don't get this in time to answer, come. I will be at place any way.

Saturday night.

### Letter No. 3.

Miss Lena: I went at 7:45 to Twentieth and Marshall, and waited till 8 and after. Now, if you intend to be a friend, you meet me at 4 o'clock Monday, at Fourteenth and Broad, for this is the last time I shall ask you. I don't want to be fooled again. If you want boys instead of my friendship, that is all right. You come, if you have to stay home from work. You shall be paid for the week's time. Come sure. This is the last time I will ask you.

Your Friend.

Monday, 16th, 4 p. m., Fourteenth and Broad.

### Letter No. 4.

Tuesday.

Miss Lena: I said to you in my last note that I would not trouble you again, but as you did not think well enough of me to answer it, I will break my word to write this one, asking you if you wish my friendship to cease. If so, answer. I will not get mad, for I don't think from the way you act you care much for it. You can't say that I have not tried to be a friend to you. You will please do me a favor to destroy notes. You have envelope addressed. Answer to

A. Goodfellow.

Corner Twenty-First and Marshall, Care of T. B. Williams.

Hoping you may do well with boy friends. You will find your error soon; mark my words.

### Letter No. 5.

Tuesday Eve.

Miss Lena: Why don't you keep your promise, and meet me at Twenty-Third and Franklin to-day, as you promised? You must meet me Wednesday at 4 o'clock.

A. Goodfellow.

Care of T. B. Williams, Twenty-First and Marshall.

These letters were set out in full in separate counts of the indictment. The counts upon letters 1, 3, and 5, each concluded as follows: "Meaning by the said letter to convey a proposition from a married man to an unmarried woman for a clandestine meeting for a grossly immoral purpose, against the peace," etc. The counts upon letters 2 and 4 each concluded as follows: "Meaning by the said letter to convey a proposition from a married man to an unmarried woman for a clandestine correspondence for a grossly immoral purpose, against the peace," etc.

James Lyons and William Flegenheimer, for the motion.

The indictment in this case should be quashed upon the following grounds: (1) The indictment does not allege that the defendant deposited or caused to be deposited for mailing or delivery anything declared to be nonmailable matter by section 3893, Rev. St. U. S., as amended by the act of congress of February 26, 1888, or by any law of the United States.

(2) The indictment does not charge the defendant with any offense. The letters are set forth in full in the indictment, and show on their face that there is not one word in them which is obscene, lewd, lascivious, or indecent. The policy of the statute under which the indictment is found, and the purpose of the said act of congress, were to purge the mails of obscene, lewd, lascivious, and indecent matter, but the statute does not apply to cases which are not em-

braced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress. U. S. v. Chase, 135 U. S. 255, 10 Sup. Ct. 756; U. S. v. Sheldon, 2 Wheat. 119; U. S. v. Wiltberger, 5 Wheat. 76; U. S. v. Morris, 14 Pet. 464; U. S. v. Hartwell, 6 Wall. 385; U. S. v. Reese, 92 U. S. 214. It is respectfully submitted that this case is not within the terms of the statute, and that the indictment must be quashed.

### F. R. Lassiter, Dist. Atty., for the United States.

This indictment is drawn under the act of February 26, 1888, which is amendatory of section 3893, Rev. St. U. S. Of the many questions that have risen out of the subject-matter of this statute since its origin in the act of June 8, 1872, only one is raised in the present issue, namely, whether the letters on which the indictment was found are obscene, lewd, or lascivious, or of an indecent character. The last act on the subject (under which this indictment is drawn) seems to have set at rest most of the questions formerly raised, but the question now presented, being a mixed question of law and fact, might well arise in every appeal to the statute, and is to be determined by the jury, under the guidance of the court, which will define the meanings of the terms employed, and explain the intent of the enactment. U. S. v. Harmon, 45 Fed. 418.

#### History of the Law.

The history of the legislation on this subject is traced in Re Wahll, 42 Fed. 825. It is interesting to follow the gradual stages of the law, because at each successive amendment the law has become more general and sweeping in its character. "I think no one can follow the legislation from 1872 up to September 26, 1888, without being convinced that congress intended finally to purge the United States mail, and, as far as possible, prevent it from becoming a vehicle for the transmission of obscene, indecent, and lascivious messages." "It is said that the history of the legislation clearly shows that the congress determined to exclude from the mails writings of an impure and immoral character, and not such as was merely coarse, rough, or vulgar." U. S. v. Males, 51 Fed. 42.

#### Definitions.

The words of the statute have been successively defined as follows: "The word 'obscene' ordinarily means something that is offensive to chastity, something that is foul or filthy, and for that reason is offensive to pure-minded persons." U. S. v. Clarke, 38 Fed. 733. "A standard dictionary says that 'obscene' means 'offensive to chastity and decency; expressing or presenting to the mind or view something which delicacy, purity, and decency forbid to be expressed.'" U. S. v. Harmon, 45 Fed. 417. "'Obscenity is such indecency as is calculated to promote the violation of the law and a general corruption of morals, * * * includes what is immodest and indecent, and is calculated to excite impure desires, or to corrupt the mind." U. S. v. Males, 51 Fed. 42.

#### Tests of Obscenity.

It has been held that the proper test to be applied to the foregoing definitions will be found in such considerations as the following: "There is another large class to be found in every community—the young and immature, the ignorant, and those who are sensually inclined—who are liable to be influenced to their harm by reading indecent and obscene publications. The statute under which this indictment is framed was designed to protect the latter class from harm, and it is a wholesome statute. Hence, in judging of the tendency of the publication to deprave or corrupt the mind or to excite lustful or sensual desires (which are the tests of obscenity and lewdness), you should consider the effect that the publication would have on the minds of that class of persons whom the statute aims to protect." U. S. v. Clarke, 38 Fed. 734. "The test of obscenity is this: Where the tendency of the matter charged as obscene is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall." and "where it would suggest to the minds of the young of either sex, or even to persons of more advanced years, thoughts of the most impure and libidinous character. * * * Rather

is the test, what is its probable reasonable effect on the sense of decency, purity, and chastity of society extending to the family, made up of men and women, young boys and girls,—the family, which is the nursery of mankind, the foundation rock upon which the state reposes?" U. S. v. Harmon, 45 Fed. 417. "The test is whether the tendency of the matter is to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands such matter may fall. The writing need not use words which are themselves obscene, in order to be obscene. Courts have regard to the idea conveyed by the words used, in the writing, and not simply to the words themselves." U. S. v. Males, 51 Fed. 42.

### Object of the Law.

As to the intention of congress, compare the gradual growth of the legislation on this subject and Ex parte Jackson, 96 U. S. 727. Congress may exclude what it pleases from the mails. Id. 732. "In excluding various articles from the mail, the object of the congress has not been to interfere with the rights of the people, but to refuse facilities for the distribution of matter deemed injurious to the public morals. All that congress meant by this act was that the mail should not be used to transport corrupting publications or writings, and that any one who attempted to use it for that purpose should be punished." U. S. v. Males, 51 Fed. 42. "The purpose of the statute was to prevent the mails from being used to circulate matter to corrupt the morals of the people." Ex parte Doran, 32 Fed. 76. "And while it may be conceded to the contention of counsel that the federal government, under its constitutional limitations, ought not to take upon itself the office of censor morum, nor undertake to legislate in regulation of the private morals of the people, yet congress may, as the basis of legislation of this character, have regard to the common consensus of the people that a thing is malum in se,—is hurtful to the public morals,—endangering the public welfare, and therefore deny to it as a vehicle of dissemination the use of its post office and post roads devised and maintained by the government at the public expense for the purpose of promoting the public welfare and common good." U. S. v. Harmon, 45 Fed. 418.

### Application and Comparison.

The foregoing definitions and principles have been recently in this state applied to a state of facts which seem identical with the case at bar. Compare the opinion and letters set out in the case of U. S. v. Martin (decided by Paul, District Judge), in 50 Fed. 920.

HUGHES, District Judge. These letters are not, in terms, obscene. Because they are not, they have been published in full in the Richmond daily newspapers, and in other public journals. They contain no indecent language, words, or expressions. They contain requests that the girl should meet the writer on a public street in the daytime; complaints of her failure to meet him in that manner, as requested before; and warnings that he would cease to make these requests any longer, and that he would withdraw his friendship from her. They were mailed, and, if there is any law of the United States making the mailing of such matter penal, the accused is liable to prosecution in this court for mailing them. But there is no such law on the federal statute books. Although they are free from lewd and indecent language, expressions, and words, yet they may have been written for the purpose of seduction, or to obtain meetings for immoral purposes; and the accused, by mailing them, may have abused the privilege of the mails given to every citizen. This misuse of the mails and abuse of the citizen's privilege for the purpose of seduction, or for assignations, is a heinous offense against society; but I do not see that it is an offense against any statute law of the

United States. There probably ought to be such a law, and it is probable that before very long congress will see the propriety of passing one; but as yet it has not done so, and there is none on the statute books.

It is the province of the state to protect the morals of society, and to punish all violations of them. There are state laws which do seek to effect this object, but I do not know of any state law punishing the crime of writing letters for the purpose of seduction and procuring assignation meetings. If there be, the crime of writing and sending such letters is a state offense, punishable by the state courts. In order for the sending of such letters to be cognizable by the federal courts, two things must concur: First, the letters shall be mailed; and, second, the offense of mailing letters intended for seduction or procuring immoral assignations shall be made penal by some express statute of the United States. I repeat that I know of no law of the United States making penal the mailing of letters intended for seduction or for procuring such assignations. If congress had intended to make such mailing penal, it could have easily done so by an act couched in plain, unmistakable words. Congress has not done so, and this indictment has been drawn upon a statute (section 3893, Rev. St., amended in Supp. Rev. St., at page 621) prohibiting the mailing of obscene, lewd, lascivious language, pictures, words, phrases, letters, and otherwise indecent publications. The language of this statute is, so far as applicable to this case: "Every obscene, lewd, or lascivious letter of an indecent character." Such a letter is declared to be unmailable, and the offense is subjected to heavy penalties. Obviously, two things must concur to make up the offense: First, the letter must be obscene, lewd, etc.; and it must be of an indecent character. Inasmuch as every letter is written, and is a composition of words, it necessarily follows that for a letter to be obnoxious to this statute its language must be obscene, lewd, or lascivious, and it must be of indecent character. The statute does not declare that the letter must be written for an indecent or obscene purpose, but that the letter itself, in its language, shall be of indecent character. The letters set out in the indictment are not themselves of indecent character, and, if used for such purposes as have been named, congress has not made such purposes criminal. When a law denounces a letter containing obscene language, and does not denounce a letter decent in terms, but written for an indecent purpose, an indictment founded only upon the obscene purpose cannot be maintained.

No laws are more dangerous or more offensive to the public sense of justice than "judge-made" penal laws. No principle of construction, in respect to penal laws, is more thoroughly settled than that they are to be construed by their very language, and the plain intention with which that language is used. For the courts to interpolate a purpose of such use not expressed by the law, and not necessarily implied from its tenor, is for the courts themselves to make penal laws not enacted by the legislative power.

Cases have been cited at bar showing that several courts have interpolated into the statute—have "read into the law"—from which I

have quoted language which makes it virtually read: "Every obscene, lewd or lascivious letter of an indecent charater mailed [for the purpose of seduction or for procuring an immoral assignation] shall be punishable by fine and imprisonment." If congress had intended that the crime should consist of writing and mailing indecent and obscene letters, written with such a purpose, it would have so declared. It did not interpolate such a purpose in the offense, and no court has a right to do what congress did not do, and what congress could readily have done if it had intended to denounce the use of the mails for the purpose of seduction or procuring immoral assignations. It is not competent for the courts to create, by interpolation in a penal statute, a crime of purpose or intention not expressed in plain words in the statute itself. In the case at bar the accused is indicted for mailing a letter free from the immoral language inhibited by a statute, written apparently for the purpose of seduction or procuring assignations, under a statute which prohibits the mailing of obscene language, and does not prohibit the mailing of letters written for the purpose of seduction or appointing assignations. He is sought to be tried for an offense not prohibited by law, under a statute denouncing another offense. The motion to quash must be granted.