UNITED STATES v. MOORE.

(District Court, W. D. Missouri, Central Division. March 22, 1904.)

No. 3,262.

1. POST OFFICE—NONMAILABLE MATTER—OBSCENE LETTER—STATUTES—CONSTRUCTION.

Rev. St. U. S. § 3893 [U. S. Comp. St. 1901, p. 2658], provides that every obscene, lewd, or lascivious book, pamphlet, writing, or other publication of an indecent character shall be nonmailable. *Held*, that where the necessary inference from the language used in a letter was obscene, and tended to offend the sense of decency, purity, and chastity of society, it was immaterial that the words used were not themselves obscene.

2. SAME.

A letter was written by a married man to a married woman, not his wife, whom he had never met, suggesting that he hoped the same would come to her as "a ray of sunshine on a cloudy day"; that his attention had been called to her "by a friend of ours," and asked her to meet him on an afternoon at the house of an old lady who kept rooms to rent "for such meetings"; that his proposition was "all straight goods," and that he would be "a good friend" to her, and, though he had never been at such proposed meeting place, he knew others who had been there, and had been informed by them that it was "all O. K." *Held*, that the purpose of such letter was an invitation and solicitation to the addressee to meet the writer for illicit intercourse, and was therefore obscene, within Rev. St. U. S. § 3893 [U. S. Comp. St. 1901, p. 2658], prohibiting the sending of any obscene writing through the mails.

---

¶ 1. Obscene matter as nonmailable, see note to Timmons v. United States, 30 C. C. A. 79.

See Post Office, vol. 40, Cent. Dig. § 50.

On Demurrer to Indictment.

William Warner, U. S. Dist. Atty.

C. D. Corum and J. G. Slate, for defendant.

PHILIPS, District Judge. The defendant stands indicted under section 3893, Rev. St. U. S., 1 Supp. Rev. St. p. 621 [U. S. Comp. St. 1901, p. 2658], for writing and placing, or causing to be placed, in the post office of the United States at Jefferson City, Mo., an obscene, lewd, and lascivious letter, of an indecent character. The letter is in words and figures as follows:

"October 7, 1903.

"Dear Mrs. Thomas: I know you will be surprised to get this letter but I hope it will be a glad surprise. I hope it will come to you as a ray of sunshine on a cloudy day, I do not know you personally, but I have heard you spoken of by a friend of ours. I have been wanting to meet you, but so far have failed. I have taken this method of trying to get acquainted with you. I don't know whether my suggestion will meet with your approval or not, are whether you will want to meet me or not. If you do and will do as I tell you, we can meet each other and no one will ever know it. And we can pass some pleasant afternoons together. There is an old lady by the name of Mrs. Willard that keeps rooms to rent for such meetings. She lives West of Elston House up stairs on the first floor over the book bindery. Go up the stairs between the book bindery and the Saloon. Tell her that you have a 'gentleman friend' that you want to meet there. Say twice a week and that he is alright, and will treat her right. I have never been at her place but I know some parties that go there and they tell me it is all o. k. I want to meet you there at about 3 o'clock Thursday afternoon. You go about 2:30 and talk to the old lady and get on the good side of her. I want you to be sitting at the front window with your hat on, so I will know that you are there and that you want to see me. I will come up on the opposite side of the street and will tip my hat so you will know it is me comming, and you can meet me at the top of the stairs. This is all straight goods. And I will be a good friend to you. If you cannot go on Thursday afternoon, go Friday. But I will look for you Thursday. Will not sign my name. Will tell you all about myself when I see you.                                                    A friend.

"Don't fail me."

The defendant has demurred to the indictment on the ground that, the letter being admitted, it does not come within the purview of the statute. Reliance for this contention is predicated of the ruling in United States v. Lamkin (C. C.) 73 Fed. 459. The correctness of the ruling in that case can be conceded without affecting the validity of this indictment. The character of the letters upon which that indictment was based is materially different from the letter in question. But the reasoning of the learned judge in his opinion in that case does not wholly accord with my view of the statute. The trend of the opinion, if I read it aright, is that unless the language employed in the letter is per se coarse, obscene, lewd, lascivious, or indecent, although it is discernible on the face of the letter that it was written for the immoral purpose of inviting and stimulating illicit intercourse with a woman, it is not within the denunciation of the statute. It may be conceded that the forbidden character of the book, pamphlet, picture, paper, letter, etc., is to be found on its face. If the terms employed do not, in and of themselves, reasonably convey the suggestion of obscenity, lewdness, or lasciviousness, they cannot be eked out by evidence aliunde; that is to say, the court cannot, with strained eyes, read into the letter a hidden

purpose its language does not naturally import. But it is as equally true that the obscene, lewd, lascivious, indecent character of the writing is not to be made to depend upon the fact that the language employed must be coarse, blunt, and bald. Language is a vehicle of thought. "Chaste words may be applied so as to be understood in an obscene sense by every one who hears them." Edgar v. McCutchen, 9 Mo. 768. Words, abstractly considered, may be free from vulgarism, yet they may, by reason of the context, manifest to the intelligent apprehension the most impure thoughts, and may arouse a libidinous passion more effectually in the mind of a modest woman than the coarse vernacular of the bawd and the pimp. The poison of the asp may lie beneath the honeyed tongue, just as a beautiful flower may contain a deadly odor. The statute does not say that every book, pamphlet, picture, paper, letter, writing, etc., containing obscene, lewd, or lascivious language, is prohibited to the use of the mails; but it is the "indecent character," obscene, lewd, or lascivious in its nature and import, against which the statute is leveled. In other words, it is the effect of the language employed, conveying obscene, lewd, or lascivious suggestions, tainted with immorality and impurity, which is struck at by the statute.

Judge Thayer, in United States v. Clarke (D. C.) 38 Fed. 732, in discussing this statute, when it was directed only against the admission to the United States mails of books, pamphlets, pictures, papers, writings, and prints, said:

"The word 'obscene,' * * * when used, as in the statute, to describe the character of a book, pamphlet, or paper, means containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall, whose minds are open to such immoral influences."

In United States v. Harmon (D. C.) 45 Fed. 414, 417, the word "obscene" was discussed, and, quoting from Chief Justice Cockburn in Rex v. Hicklin, L. R. 3 Q. B. 360, "where the tendency of the matter charged as obscene is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall, and where it would suggest to the minds of the young of either sex, or even to persons of more advanced years, thoughts of the most impure and libidinous character," the court said:

"Rather is the test, what is the judgment of the aggregate sense of the community reached by it? What is its probable, reasonable effect on the sense of decency, purity, and chastity of society, extending to the family, made up of men and women, young boys and girls?"

In United States v. Martin (D. C.) 50 Fed. 918, the letter in question was written by a married man to an unmarried woman, the substance of which was a solicitation by him to her to take a trip with him to Lynchburg, Va., with a proposition to pay her expenses and $5 besides, with the suggestion that, "if you will go, I will promise you a nice time," and that she would contribute to his happiness, and would never regret it, etc. The court, after adverting to the foregoing cases of the United States v. Clarke and United States v. Harmon, said:

"Taking these definitions, and applying them to the letters on which this indictment was found, the court cannot see how any other construction can be put upon them, than that they are obscene, within the meaning of the

statute. The expressions used in the letters can leave no doubt as to their lewd and lascivious character. It is difficult to conceive what can be more shocking to the modesty of a chaste and pure-minded woman than the proposition contained in these letters. It is no less than a proposition from a married man to an unmarried woman, proposing a clandestine trip to the city of Lynchburg for a grossly immoral purpose."

In Dunlop v. United States, 165 U. S. 486, 500, 17 Sup. Ct. 375, 380, 41 L. Ed. 799, it appears that the trial court, in charging the jury, inter alia, said:

"Now, what are obscene, lascivious, lewd, or indecent publications, is largely a question of your own conscience and your own opinion. * * * it must come up to this point: that it must be calculated, with the ordinary reader, to deprave him, deprave his morals, or lead to impure purposes."

In passing upon this instruction, Mr. Justice Brown, speaking for the court, said:

"The alleged obscene and indecent matter consisted of advertisements by a woman, soliciting and offering inducements for the visits of men, usually 'refined gentlemen,' to their rooms, sometimes under the disguise of 'baths' and 'massage,' and oftener for the mere purpose of acquaintance. The court left it to the jury to say whether it was within the statute, and whether persons of ordinary intelligence would have any difficulty in divining the intention of the advertiser. We have no doubt that the finding of the jury was correct upon this point."

In United States v. Wroblenski (D. C.) 118 Fed. 496, the court said:

"In either case [that is, of publication or sealed private letter] the question of violation of the statute rests upon the import and presumed motive, and not upon the mere terms of the communication. Thus its tendency depends upon circumstances, and unexceptional language may convey vicious information within the statute. In the case of a private letter there is no publication, and no presumption arises of intention to give publicity, or that it will be read by others than the addressee. The language or communication may be free from the condemnation of the statute in one instance, while it would clearly fall within it when addressed to other persons. So the inquiry as to the tendency of the letter must be narrowed to its liability to corrupt the addressee."

Turning to the letter in question here, what is its plain purport? It was written by the defendant, admitted to be a married man, to Mrs. T., with whom he had never met, with the suggestion that he had hoped his missive would come to her as "a ray of sunshine on a cloudy day"; that his attention had been called to her "by a friend of ours." He expressed some apprehension lest his advance might not meet with approval. He therefore essays to beguile her by suggesting that if she will meet him, and "do as I tell you, we can see each other and no one will ever know of it; and we can pass some pleasant afternoons together." Indeed, he suggests broadly in the letter an assignation house favorable "for such meetings," and enters into details for signals for such clandestine meeting; that, while he has never been on this "happy meeting ground," he knows parties who say it is O. K.; winding up with the suggestive assurance that "this is all straight goods, and I will be a good friend to you. I will not sign my name. Will tell you about myself when I see you." Can two intelligent minds reach any other conclusion on reading this letter than that its purpose was an invitation and solicitation to Mrs. T. to meet the writer for illicit inter-

course? The very secrecy and safety of the method of meeting was calculated to excite in the mind of the addressee libidinous thoughts and indulgence, if there was any such lurking tendency in her character. In short, it was a seductive letter—as much so as if the writer had employed broader and balder indecent expressions for bringing about adulterous intercourse with this woman. At all events, it certainly is a question for the jury to pass upon, under proper instructions from the court.

The demurrer is overruled.