PARISH v. UNITED STATES.*

(Circuit Court of Appeals, Fourth Circuit. November 17, 1917.)

No. 1557.

1. CRIMINAL LAW ⬅➡829(1)—TRIAL—INSTRUCTIONS.

The refusal of requests covered in substance by the charge given, is not error.

2. POST OFFICE ⬅➡50—OFFENSES—UNMAILABLE MATTER.

A letter written by defendant to a school-teacher, reciting that he saw her and a man in a compromising position; that she knew what the school trustees would do if told; that defendant had a proposition to make before exposing the whole thing; that if she decided to see him she could arrange the meeting place; that if he did not receive an answer before a day fixed, he would see the school trustees; and that she should not be afraid to write, as no one, not even his wife, would know—cannot as a matter of law be held not to be obscene, lewd, or lascivious within Pen. Code (Act March 4, 1909, c. 321) § 211, 35 Stat. 1129 (Comp. St. 1916, § 10381), denouncing the offense of transmitting such matter through the mail, but in view of its obvious import, the question whether the letter violated the statute should be submitted to the jury.

3. CRIMINAL LAW ⬅➡1129(1)—APPEAL—ASSIGNMENTS OF ERROR.

The question whether the trial judge erred in stating that in his opinion a letter made the basis of a prosecution for violating the statute against mailing obscene matter was a solicitation for an immoral purpose, mailed in contravention of the act, cannot be reviewed where not assigned.

4. CRIMINAL LAW ⬅➡656(9)—TRIAL—WEIGHT OF EVIDENCE.

In a prosecution in the federal court, the trial judge has the right to express an opinion as to the weight of the evidence, provided the question of fact is ultimately submitted to the jury.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 8, 1918.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

B. P. Parish was convicted under Penal Code, § 211, of sending through the mails obscene, lewd, and lascivious matter, and brings error. Affirmed.

Arthur R. Young, of Charleston, S. C., and Jennings K. Owens, of Bennettsville, S. C. (Hagood, Rivers & Young, of Charleston, S. C., on the brief), for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty. of Columbia, S. C., on the brief), for the United States.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The plaintiff in error, hereinafter referred to as defendant, was indicted and tried under section 211 of the Penal Code of 1909, in the District Court of the United States for the Eastern District of South Carolina.

The indictment charges the defendant with mailing a letter which it is alleged was obscene, lewd, and lascivious, the letter in question being in the following language:

"B. P. Parish. J. B. Parish, E. E.
"Pee Dee Light & Power Company.
"Clio, S. C., May 10/17.

"Miss A. B. Vann, Clio, S. C.—Dear Mdm.: Doubtless you will be surprised to get a letter from me but I feel it my duty to write. About two or three months ago I saw you and Dave R. in a very funny position down at my mill and last Sunday me and my wife and some other parties saw you at the same thing again. Now Miss Vann there is no good in you trying to deny this charge as we saw you and Dave on the raincoat together and thought we would stop you when you came back across the milldam and tell you what we were going to do but both of you looked too sheepish to bother with. You know what the school trustees will do about this if I tell them as well as I do. Now I have a proposition to make you before I expose the whole thing and if I can see you and have a private talk with you I think I can keep the whole thing quiet. Will leave this part with you and if you decide to see me in regard to the matter you can write me to-day and let me know where I can see you at. You can come down to the mill or I will go most any place that will suit you. Now if you want to keep this quiet don't let Dave know anything about it as he will try to raise sand and only make the matter worse for you.

"Will wait for my answer till to-morrow noon and if I don't hear from you by that time I will see Mr. Roberts and the school trustees about it.

"Don't be afraid to write as no one not even my wife will know the least thing about it, will call for my mail to-morrow noon.

"Yours truly, B. P. Parish."

The defendant in the court below moved to quash the indictment on the ground that the letter was not obscene, lewd, or lascivious, nor of indecent character or in violation of the statute. This motion was overruled. Certain requests to charge were presented which were refused and exceptions were taken. Exceptions were also taken to certain portions of the charge. The jury returned a verdict of guilty against the defendant, and sentence was imposed in pursuance there-

of. Defendant excepted, and the case now comes here on writ of error.

[1] It is insisted by the second and third assignments that the court erred in refusing certain requests to charge. While these requests were denied, we think that the substance contained therein was substantially given to the jury by the court.

[2] The main point presented for our consideration is as to the character of the letter in question. Counsel for defendant insists that the court erred in refusing to hold as a matter of law that the language of this letter was not such as to subject the defendant to indictment under the statute.

In the case of United States v. Hanover (C. C.) 17 Fed. 444, the court held that in a case like the one at bar the whole letter should be considered in determining its character.

In the case of Dunlop v. United States, 165 U. S. 486, 17 Sup. Ct. 375, 41 L. Ed. 799, the court, in charging the jury inter alia, said:

"Now, what is [are] obscene, lascivious, lewd, or indecent publications is largely a question of your own conscience and your own opinion; but it must come—before it can be said of such literature or publication—it must come up to this point: That it must be calculated with the ordinary reader to deprave him, deprave his morals, or lead to impure purposes."

Mr. Justice Brown, in passing upon this instruction, said:

"The alleged obscene and indecent matter consisted of advertisements by women, soliciting or offering inducements for the visits of men, usually 'refined gentlemen,' to their rooms, sometimes under the disguise of 'Baths' and 'Massage,' and often for the mere purpose of acquaintance. It was in this connection that the court charged the jury that, if the publications were such as were calculated to deprave the morals, they were within the statute. There could have been no possible misapprehension on their part as to what was meant. There was no question as to depraving the morals in any other direction than that of impure, sexual relations. The words were used by the court in their ordinary signification, and were made more definite by the context, and by the character of the publications which had been put in evidence. The court left to the jury to say whether it was within the statute, and whether persons of ordinary intelligence would have any difficulty in divining the intention of the advertiser. We have no doubt that the finding of the jury was correct upon this point."

In the case of United States v. Moore (D. C.) 129 Fed. 159, after discussing the merits of the case, the court employed the following language at the conclusion of the opinion:

"In short, it was a seductive letter—as much so as if the writer had employed broader and balder indecent expressions for bringing about adulterous intercourse with this woman. At all events, it certainly is a question for the jury to pass upon, under proper instructions from the court."

The case of United States v. Wroblenski (D. C.) 118 Fed. 495, we think, is very much in point. In that case the court said:

" * *. * In either case the question of violation of the statute rests upon the import and presumed motive, and not upon the mere terms of the communication. Thus its tendency depends upon circumstances, and unexceptionable language may convey vicious information within the statute. * * * In the case of a private letter (sealed) there is no publication, * * * and no presumption arises of intention to give publicity, or that it wlil be read by others than the addressee.. The language or communication may be free from the condemnation of the statute in one instance, while it would clearly

fall within it when addressed to other persons. So the inquiry as to the tendency of the letter must be narrowed to its liability to corrupt the addressee. * * * "

It is insisted by the government that the purpose of the letter in question, under the circumstances, is easily divined; that if the defendant had had an intimate acquaintance with the young lady to whom the letter was addressed and the letter had contained a definite proposition on his part to relieve her from embarrassment in a substantial way, telling her that he proposed to see the school trustees and set matters right with them, then, in that event, it would have been the duty of the court below to say as a matter of law that the letter did not come within the purview of the statute.

Nothing appears in the evidence to show that he had more than a passing acquaintance with this young lady, nor is there anything to indicate that he knew any of her people or had any special reason to induce him to act as her protector. Under these circumstances, for what purpose was this letter written? Can it be reasonably insisted that defendant's purpose was to protect the good name of this young woman? If such had been the purpose of defendant, would he not have invited her to call at his home, where he and his wife could have conferred with her as to the best means to be employed in extricating her from what appeared to be an unfortunate situation? Undoubtedly this would have been the course naturally adopted by one actuated by honorable intentions. However, instead of approaching the young lady in a friendly and disinterested spirit, he opens the second sentence in his letter by breathing a threat as to what would happen in the event she should fail to comply with his request for an interview. On this point he says:

"About two or three months ago I saw you and Dave R. in a very funny position down at my mill and last Sunday me and my wife and some other parties saw you at the same thing again. Now Miss Vann there is no good in you trying to deny this charge as we saw you and Dave on the raincoat together and thought we would stop you when you came back across the milldam and tell you what we were going to do but both of you looked too sheepish to bother with. You know what the school trustees will do about this if I tell them as well as I do. Now I have a proposition to make you before I expose the whole thing and if I can see you and have a private talk with you I think I can keep the whole thing quiet."

He then admonishes Miss Vann to say nothing to the young man who was with her about the matter "as he will try to raise sand and only make matters worse for you," and also assures her that no one, not even his wife, will know about the matter.

Can it be reasonably insisted that it was the purpose of defendant by seeking this interview to tell her that he was going to intercede with the school trustees in her behalf, inasmuch as he warns her that if she does not grant him an interview that he will expose the whole thing? This sentence immediately follows the sentence in which he says "you know what the school trustees will do about the matter if I tell them as well as I do." This clearly indicates that unless she complied with his request, he would call the matter to the attention of the school trustees. The tone of his letter also indicates that his primary object was to convince this young lady that her conduct was highly improper,

and that the only way she could avoid exposure would be to have a private conference with him at his mill or any place that might suit her.

We are of opinion that the question as to whether this letter was susceptible of the interpretation that the defendant had conceived a scheme to have a private interview with the young lady, for the purpose of using the knowledge which he claimed to possess to coerce her to accede to his immoral demands, was properly submitted to the jury. Such being the case, the action of the lower court in permitting the jury to determine the character of the letter was eminently proper, and in expressing this view we are not in conflict with the law as announced in the cases of United States v. Journal Co., Inc. (D. C.) 197 Fed. 415, and Knowles v. United States, 170 Fed. 409, 95 C. C. A. 579.

By the fifth assignment it is insisted that the court below erred in telling the jury that they might consider the surrounding circumstances as an aid in construing the letter. We think that this assignment is without merit. The defendant introduced testimony to show the surrounding circumstances as bearing upon the question of motive and intention. In this respect we think the court was very generous in its treatment of the defendant. It would have been manifestly unfair to permit the defendant to go into this matter and not accord the government the same privilege.

[3, 4] Counsel for defendant, in their brief, say that:

"In refusing to quash the indictment the trial judge stated that in his opinion the letter was a solicitation for an immoral purpose, coupled with a contravention of the act, but would submit the question to the jury. This statement was made in the presence of the venire of jurors, who were in the court, and at once created such an atmosphere that it was practically a foregone conclusion that any jury impaneled would convict."

However, there is no assignment of error upon which to base this contention. If this point were properly before us, we would be inclined to hold that, inasmuch as the court below submitted the question to the jury as to character of the letter, thus permitting them to pass upon this question, the court was not in error. It is not necessary to cite authorities in support of the proposition that the court had the right to express an opinion as to the weight of evidence, provided it ultimately submitted the facts to the jury to be passed upon by them, as in this instance. A careful consideration of the cases relied upon by defendant show that they do not tend in the slightest to vary the rule which we have announced.

In view of all the facts and circumstances surrounding this transaction we think that the defendant received a fair and impartial trial, and that he justly merits the punishment meted out to him by the court below.

For the reasons stated the judgment of the court below is affirmed.