## KRAUSE v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
November 8, 1928.

No. 2731.

Emil T. Mallek, of Baltimore, Md.. (George W. Cameron, of Baltimore, Md., on the brief), for appellant.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md.

Before WADDILL and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

WADDILL, Circuit Judge. This is an appeal from a judgment of the United States District Court for the district of Maryland,. at Baltimore, sentencing the appellant to serve two years in the federal penitentiary at Atlanta, after trial and conviction on a. charge of sending obscene matter through the mails.

The appellant, Victor Krause, was indict-ed on December 14, 1927, by the grand jury for the district of Maryland, for a violation of section 211 of the Criminal Code, as amended (USCA tit. 18, § 334), in that he mailed a letter to one Lincoln C. Baird, United States Naval Hospital, Annapolis, Maryland, which letter was alleged to be "obscene,. lewd, lascivious, and filthy," and "designed by the said Victor Krause to deprave the morals of the said Lincoln C. Baird," and to. induce said Baird to commit sodomy and other unnatural and perverted practices with.

said Victor Krause. Krause demanded a bill of particulars, which was furnished him by the government, in which the letter itself was quoted, which read as follows:

"Baltimore, June 1.

"My Dear Buddy

"No doubt you will be surprised to hear from me, but I just had to inquire how you are. I have been thinking of you every day since we met, as I enjoyed our meeting, and I hope you could meet me quite often, if convenience presents itself. Now, Buddy, I will be down the chateau this Friday night at 8. So if you can come which I hope you can, I will meet you at the station, at Severna Park, in the meantime I will try to call for you at the Hospital with a Friend and his car. So try to get your little Pal to come with you no others. I will call you up Friday noon time if every think will be o. k. trusting you are well and happy as Sat morning last, you know. So try to come.

"Yours truly Victor Krause.

"With sincere regards."

—with the further statement that the prosecutor would rely upon the letter and parol evidence to be produced at the trial to prove the charges set out in the indictment.

The defendant filed a motion to quash the indictment for the reasons that the letter quoted in the bill of particulars, and referred to in the indictment, contained no word which was obscene, lewd, lascivious, or indecent; that the purpose of the statute was to purge the mails of obscene, lewd, lascivious, and indecent matter; and that the statute did not apply to cases which were not embraced in the language employed in it or implied from a fair interpretation of its contents, even though they might involve the same mischief which the statute was designed to suppress. This motion to quash was denied, and a demurrer to the indictment was overruled. The defendant pleaded "Not guilty," and upon trial was convicted and sentenced.

The prosecution offered the testimony of two witnesses, Brill, a post office inspector, and Baird, the addressee of the letter, at the conclusion of whose testimony the government rested its case. The defendant offered no evidence, and made four requests for a directed verdict in his favor, which were refused, to which action of the court the defendant duly excepted, as he did to sundry other rulings of the court, covered by 21 exceptions regularly and formally taken and filed. Upon the return of a verdict of guilty by the jury, the defendant filed his motion for a new trial, and also moved in arrest of judgment, which motions the court overruled, to all of which actions the defendant duly excepted, as aforesaid.

A general discussion of the subjects covered by the 25 assignments of error need not be entered into, since the real question to be determined in this case is whether the letter, the subject of the alleged infraction of the statute, is one that comes within its meaning and purpose. If it is not, then manifestly the jury trial, in which appellant was convicted, should not have been had, but, on the contrary, the case should have been disposed of by sustaining the motion to quash the indictment upon the filing of the bill of particulars furnished.

■ This statute has frequently been the subject of review by the courts, and it has been found necessary, in ascertaining its meaning, to determine whether the letter under consideration, within and of itself, constitutes an infraction of the statute. This, of course, involves the purposes for which the statute was passed, and whether the same, as an act of Congress, was not primarily intended as a regulatory measure for the conduct of the mails of the United States, and to keep them free and clear of improper, indecent, lewd, and lascivious matter, alleged to have been referred to in the letter, and to which exception is taken, rather than for the punishment of violations of criminal offenses provided for under the laws of the various states. It may not be said, of course, that the law should be construed only by the specific words used in the statute, but, on the contrary, its meaning must be arrived at from the general language used, the circumstances in which the same was written, and in the light of the purposes of the particular act, and the evils sought to be remedied by its passage.

■ The manner and method of disposition of the case, whether upon demurrer to, or motion to quash, the indictment, necessarily depends upon its peculiar facts and circumstances, sight not being lost of the fact that the interpretation of an act of Congress is involved, and that its purpose is to keep the mails free and clear of indecent and improper matter. Unless the act has been violated by mailing the letter in this case, no offense within the purview of the statute has been committed, and there is no good reason why the case should not have been disposed of in the usual method prescribed for the disposition of criminal cases; that is, by raising the legal questions by preliminary motions at the threshold of the case, and subsequently, if necessary, de-

pending upon the conclusion reached upon such preliminary motions by submitting the case to the jury. United States v. Rosenberg, 7 Wall. 580, 583, 19 L. Ed. 263; Rosen v. United States, 161 U. S. 29, 30, 16 S. Ct. 434, 40 L. Ed. 606; Swearingen v. United States, 161 U. S. 446, 451, 16 S. Ct. 562, 40 L. Ed. 765; United States v. O'Donnell (C. C.) 165 F. 218; United States v. Benedict (C. C.) 165 F. 221; United States v. Journal Co., Inc. (D. C.) 197 F. 415, 416, 417; Bishop's Criminal Procedure, §§ 758, 759, 761–763.

In passing upon the motion to quash the indictment upon filing of the bill of particulars, the character of the contents of the letter in question—that is to say, whether it came within the inhibited classes named in the statute—at once arose, and while, where serious doubt exists, arising upon the face of the letter, as to its character, meaning, or purpose, the same might have been submitted to the jury for determination, but not, as here, where the letter upon its face presented no serious question of doubt as to the paper not being one within the purview of the act. Generally it may be said that the determining feature as to the nonmailability of the letter, in the circumstances, is whether the same is obscene, lewd, or lascivious, and by its language would tend to deprave and corrupt the morals of those into whose hands it might fall, open to such influences, by arousing lascivious thoughts.

In Swearingen v. U. S., 161 U. S. 446, 450, 451, 16 S. Ct. 562, 563 (40 L. Ed. 765), supra, Mr. Justice Shiras, speaking for the Supreme Court of the United States, said:

"Assuming that it was within the province of the judge to determine whether the publication in question was obscene, lewd and lascivious, within the meaning of the statute, we do not agree with the court below in thinking that the language and tenor of this newspaper article brought it within such meaning. The offense aimed at, in that portion of the statute we are now considering, was the use of the mails to circulate or deliver matter to corrupt the morals of the people. The words 'obscene,' 'lewd,' and 'lascivious,' as used in the statute, signify that form of immorality which has relation to sexual impurity, and have the same meaning as is given them at common law in prosecutions for obscene libel. As the statute is highly penal, it should not be held to embrace language unless it is fairly within its letter and spirit.

"Referring to this newspaper article, as found in the record, it is undeniable that its language is exceedingly coarse and vulgar, and, as applied to an individual person, plainly libelous. But we cannot perceive in it anything of a lewd, lascivious and obscene tendency, calculated to corrupt and debauch the mind and morals of those into whose hands it might fall."

This statute has been frequently under consideration by the courts of this circuit, and the decisions have not always been in harmony one with the other as to the interpretation of the same. We will briefly refer to some of the cases within our knowledge, or which have been brought to our attention.

In United States v. Martin (D. C.) 50 F. 918, Judge Paul, of the Western District of Virginia, held the letter in controversy to be in violation of the postal laws, and overruled a motion to quash and a demurrer to the indictment. Briefly the letter was one written by a married man to an unmarried woman, with whom he had no former acquaintance, soliciting her to take a trip with him from Danville to Lynchburg, Va., and spend the night, proposing to pay her expenses and $5 additional, with the suggestion that, if she would go with him, he would give her a nice time, and she would contribute to his happiness, and that she would never regret it.

In United States v. Lamkin (C. C.) 73 F. 459, Judge Hughes, of the Eastern District of Virginia, sustained a motion to quash the indictment, holding that, while the charge contained in the indictment was doubtless seeking to use the mails for a heinous offense against society and affecting assignation and seduction, nevertheless there was nothing indecent in the language, words, or expressions used, or in the propositions as proposed, and that hence they were not indictable under the statute.

United States v. Journal Co., Inc. (D. C.), another decision from the Eastern District of Virginia, 197 F. 415, involved the publication of excerpts from the testimony in a celebrated criminal case tried in the state court, claimed by reason of the alleged indecent language quoted in the publication to be in violation of the federal statute. This case was an interesting one, and will be found to contain a general discussion of the subject under consideration, with many of the authorities properly applicable. The court sustained the motion, and quashed the indictment, concluding, at page 419:

"The contents of the publication in question being clearly not within the prohibitions of the statute, as hereinbefore shown,

the motion to quash the indictment will be sustained."

The case of Parish v. United States, 247 F. 40, a decision of this court, upon an appeal from the District Court for the Eastern District of South Carolina, involved the mailing of a certain letter written by the plaintiff in error, Parish, set out in the indictment and alleged to be obscene, lewd, and lascivious. The letter set forth that Parish, a married man, claimed that he, with others, had seen the addressee of the letter, a young woman school-teacher, in a compromising position with a man named, at a time and place mentioned, and requested the addressee to come to see him and have a private talk with him, either at his mill or at a place to be selected by her, in which event he would keep the whole matter quiet; otherwise, he would inform the school authorities. The defendant in the court below moved to quash the indictment, because the letter in question was not obscene, lewd, or lascivious, nor of an indecent character, in violation of the statute, which motion was overruled, and a trial was duly had, resulting in a verdict and judgment of guilty. The motion to quash was properly overruled, as the letter was plainly within the inhibited class, indicating upon its face an immoral purpose, going, in effect, to the extent of charging the addressee, a woman of apparent good character, with acts of impropriety, and making threats of exposure if she did not comply with the sender's request to meet him privately.

We think, after the most mature thought and careful consideration, that the letter in question is not one that should have been excluded from the mails, nor should it have been omitted from the indictment because of its alleged indecent character, which omission operated to deny to the defendant the right to make his defense by demurrer to the indictment, and forced him to make the same by motion to quash upon the filing of the bill of particulars. The accused had the right to make his defense by appropriate pleadings, presenting legal questions, without embarrassment by the introduction of testimony seeking to supplement and add to the purpose and meaning of the letter, if upon its face it did not clearly fall within the statute. The letter here was written by one man to another, and does not on its face contain a single obscene, lewd, or lascivious word, or a suggestion of an immoral or indecent character, and in the absence of such obscene word or indecent suggestion in the letter no such construction can be given thereto. The statute alone creates and defines the crime, and the government cannot, by suggestion, innuendo, averment, or charge, add to its provisions, nor can it widen the statute's application by adding to the letter or writing something not contained therein.

This would seem to be too apparent to warrant argument, and the present case is a striking illustration of what would result if the view contended for by the government should prevail. In other words, the fact that no violation of the law is contained in the letter, writing, or document would utterly be ignored, and the trial would turn upon what the government is pleased to term the purpose and intent of those alleged to have violated the statute, not apparent upon the face of such letter or writing. A conviction of an accused would thus be had, not for an offense condemned by the statute, but for something that the government felt was intended, although not provided for therein.

A careful review of the testimony in this case indicates that this was the effect of what was done at the trial, without a line or syllable showing that the letter was one coming within the meaning of the statute. In other words, the indictment was for the misuse of the mails for an alleged immoral purpose by the use of a letter wholly insufficient to support the charge, whereas the trial resulted, in effect, in a conviction for the offense of sodomy, not covered by any federal statute, but by a law of the state of Maryland prescribing punishment for such offense.

Many cases could be cited, bearing especially on the question of the proper test to be applied in determining whether the particular writing comes within the statute, but only a few need be cited or especially referred to. Swearingen v. U. S., 161 U. S. 446, 16 S. Ct. 562, 40 L. Ed. 765, supra; Dysart v. U. S., 272 U. S. 655, 47 S. Ct. 234, 71 L. Ed. 461; U. S. v. Lamkin (C. C.) 73 F. 459; Knowles v. U. S. (C. C. A.) 170 F. 409; Sales v. U. S. (C. C. A.) 258 F. 597, 598.

In U. S. v. Lamkin, supra, Judge Hughes, while indicating that the letters in question may have been intended for a grossly immoral purpose, said at page 463 of 73 F.:

" * * * The statute does not declare that the letter must be written for an indecent or obscene purpose, but that the letter itself, in its language, shall be of indecent character. The letters set out in the indictment are not themselves of indecent character, and, if used for such purposes as

have been named, Congress has not made such purposes criminal. When a law denounces a letter containing obscene language, and does not denounce a letter decent in terms, but written for an indecent purpose, an indictment founded only upon the obscene purpose cannot be maintained."

In Sales v. United States, supra, Judge Hook, speaking for the Circuit Court of Appeals for the Eighth Circuit, said at page 598 of 258 F.:

" * * * * The evil character of the letter or publication declared nonmailable by the clause of the statute under consideration must be reasonably apparent or discernible on its face. * * * Instances of suggestive letters held to offend the statute may be found in Parish v. United States, 247 F. 40, 159 C. C. A. 258, and United States v. Moore (D. C.) 129 F. 159. We approve of those decisions. But we know of no case under this clause of the statute in which it has been held that, if the letter or publication in itself is not objectionable, an undisclosed motive or intent of the writer may be found to convict him. * * * "

The case of Dysart v. U. S., 272 U. S. 655, 47 S. Ct. 234, 71 L. Ed. 461, supra, contains the latest expression of the Supreme Court of the United States on the subject under consideration, and seems quite conclusive of the questions involved here. Mr. Justice McReynolds, speaking for the court, at page 656 of 272 U. S. (47 S. Ct. 234), said:

"The Circuit Court of Appeals—4 F.(2d) 765—affirmed a judgment of conviction under an indictment which charged that petitioner deposited in the post office at El Paso, Texas, for conveyance through the mails, an obscene, lewd and lascivious printed card and letter, in violation of section 211, Criminal Code. There were eleven counts, identical in all respects except that each named a different addressee, generally an unmarried woman.

"Copies of the card and letter were set out in hæc verba. They were intended to advertise the Queen Ann Private Home for unmarried women during pregnancy and confinement, who prefer to be away from home during such time, in order 'to preserve individual character or family reputation.' The letter, ostensibly intended for a doctor, states: The home is a private place for the care and protection of a few unfortunate women 'until the time when they may return to their homes and friends, free from the burden of their mistake, to become useful members of society.' 'We find homes for infants by adoption when desired, or provide board for them at reasonable rates.' Only persons recommended by reputable physicians are accepted. And it invites visits by physicians."

After setting forth the statute, the learned justice further said, at pages 657 and 658 of 272 U. S. (47 S. Ct. 234):

"The Solicitor General, with his usual commendable candor, after calling attention to the facts disclosed by the record and relevant opinions, adds: 'It is not so easy to believe that circulars of this kind could to any substantial degree undermine morals or induce delinquency. To some such a result would seem altogether fanciful.'

"In Swearingen v. United States, 161 U. S. 446, 450 [16 S. Ct. 562, 40 L. Ed. 765], where the indictment charged that the plaintiff in error mailed a newspaper containing an 'obscene, lewd and lascivious article,' contrary to section 3893, Revised Statutes, this court said: 'The offense aimed at, in that portion of the statute we are now considering, was the use of the mails to circulate or deliver matter to corrupt the morals of the people. The words "obscene," "lewd," and "lascivious," as used in the statute, signify that form of immorality which has relation to sexual impurity, and have the same meaning as is given them at common law in prosecutions for obscene libel. As the statute is highly penal, it should not be held to embrace language unless it is fairly within its letter and spirit. Referring to this newspaper article, as found in the record, it is undeniable that its language is exceedingly coarse and vulgar, and, as applied to an individual person, plainly libelous. But we cannot perceive in it anything of a lewd, lascivious and obscene tendency, calculated to corrupt and debauch the mind and morals of those into whose hands it might fall.'

"Notwithstanding the inexcusable action of petitioner in sending these advertisements to refined women, it is not possible for us to conclude that the indictment charges an offense within the meaning of the statute as construed by the opinion just cited. The motion to quash should have been sustained by the trial court."

Our conclusion is that the lower court erred in refusing to quash the indictment and dismiss the prosecution, and that, because thereof, its action should be reversed, its judgment set aside, and the case remanded to that court to be dismissed. The dis-

posal of the appeal because of the lower court's failure to quash the indictment makes it unnecessary to consider any of the other assignments of error presented herein.

Reversed and remanded.