McKNIGHT v. UNITED STATES.*

No. 7721.

Circuit Court of Appeals, Ninth Circuit.

Aug. 19, 1935.

Otto Christensen, of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Hugh L. Dickson, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

The indictment herein charged appellant and his codefendants, Bley Stein and Robert E. Taylor, with violations of sections 37 and 212 of the Criminal Code, 18 USCA §§ 88, 335. The first count of the indictment charged the defendants with having conspired to violate section 212* by depositing in the mails postal cards containing language and delineations that were libelous, scurrilous, defamatory, and

---

*Criminal Code, § 212: *"Mailing libelous and indecent matter on wrappers or envelopes.* All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card upon which, any delineations, epithets, terms, or language of an indecent, lewd, lascivious, obscene, libelous, **scur-** rilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, may be written or printed or otherwise impressed or apparent, are hereby declared nonmailable matter. * * * Whoever shall

*Rehearing denied Oct. 21, 1935.

932

calculated by the terms, manner, and style of display, and obviously intended, to reflect injuriously upon the character and conduct of Stephen W. Cunningham, who at that time was a candidate for election to the city council of Los Angeles. The evidence limits the conspiracy charge to two certain postal cards, hereinafter set forth and referred to as card No. 1 and card No. 2, respectively. In three other counts the defendants were charged with having mailed, in violation of section 212, card No. 1, which card reads as follows:

### DEFEAT CUNNINGHAM FOR COUNCIL

We Protest

Many people have been misinformed . . . and believe that Stephen W. Cunningham, candidate for council from the third district, is the "Graduate Manager" of the University of California at Los Angeles.

In view of the fact that he is, in truth, NOT a graduate of our University and since his gross mis-management of finances there has led to his dismissal, we believe that this erroneous impression should be corrected.

ALUMNI PROTEST LEAGUE,

University of California at Los Angeles
215 West 7th Street

Card No. 2 is as follows:

Defendant Stein entered a plea of nolo contendere. Appellant and Taylor were tried before a jury, which acquitted Taylor and convicted appellant on all counts of the indictment. Appealing from the judgment of conviction, appellant contends that the court erred in denying his motion for a directed verdict, which motion challenged the sufficiency of the evidence to sustain the charge. The sole question, therefore, is whether the cards in question constitute nonmailable matter within the meaning of section 212.

█ Section 212, being of a penal character, should be strictly construed and should not be held to embrace language unless it is fairly within the letter and spirit of the statute. Swearingen v. United States, 161 U. S. 446, 451, 16 S. Ct. 562, 40 L. Ed. 765; 49 C. J. 1200. In all indictments under this statute the court must first determine, as a matter of law, whether the writing complained of could, by any reasonable judgment, be held to come within the prohibition of the law. Knowles v. United States (C. C. A.) 170 F. 409, 410. "It is for the court to determine in the first instance whether any given language can have the tendency attributed to it, and for the jury to determine whether it has such tendency in fact." Magon v. United States (C. C. A.) 248 F. 201, 203. "If the publication complained of be such

knowingly deposit or cause to be deposited, for mailing or delivery, anything declared by this section to be nonmailable matter, * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both." (18 USCA § 335.)

that it could not by any reasonable judgment be held to come within the prohibition of the law, then it becomes the duty of the court as matter of law to pass upon the same." United States v. Journal Co. (D. C.) 197 F. 415, 416. To the same effect are United States v. Dennett (C. C. A.) 39 F.(2d) 564, 568, 76 A. L. R. 1092, and Krause v. United States (C. C. A.) 29 F.(2d) 248, 249. See, also, United States v. Davidson (D. C.) 244 F. 523; Warren v. United States (C. C. A.) 183 F. 718, 33 L. R. A. (N. S.) 800; United States v. O'Donnell (C. C.) 165 F. 218; United States v. Moore (D. C.) 104 F. 78; In re Barber (D. C.) 75 F. 980; United States v. Lamkin (C. C.) 73 F. 459; United States v. Jarvis (D. C.) 59 F. 357; United States v. Davis (C. C.) 38 F. 326.

Although some of the cases cited were not prosecutions under the statute here involved, the rules announced therein are nevertheless applicable, because they were prosecutions under an analogous statute, section 211 of the Criminal Code (18 USCA § 334), declaring obscene matter to be nonmailable.

The question, therefore, is whether by any reasonable judgment it can be said that the cards in question come within the class of writings declared nonmailable by section 212. If not, the court should have so ruled as a matter of law.

Obviously the cards are not indecent, lewd, lascivious, obscene, scurrilous, or of a threatening character, nor is it so contended. The government does contend, however, that the cards are libelous and defamatory and reflect injuriously upon the character and conduct of Cunningham, because they "convey to the mind of the recipient of such postal card the idea that Cunningham was not only guilty of gross mismanagement, but was guilty of theft of the money of the University." So viewed, there could be no doubt of the libelous nature of the cards. But it must be remembered, as said in Krause v. United States, supra, 29 F.(2d) 248, at page 251, that "the statute alone creates and defines the crime, and the government cannot, by suggestion, innuendo, averment, or charge, add to its provisions, nor can it widen the statute's application by adding to the letter or writing something not contained therein." Per se, the cards do not, in our opinion, offend the statute, and to view them as construed by the government would require us to read into them something which

the language and delineation appearing thereon do not express or imply.

■ As to card No. 1, the only language appearing thereon that could possibly be regarded as libelous or defamatory is the statement that Cunningham's "gross mismanagement of finances" at the University "has led to his dismissal." In our opinion, this language does not per se come within the inhibition of section 212. A charge of mismanagement does not impute embezzlement or misapplication. "One may be a mismanager without being dishonest." Lebovitch v. Joseph Levy & Bros. Co., 128 La. 518, 54 So. 978, 981. To "mismanage" means to manage badly, improperly, or unskillfully. Funk & Wagnalls Dictionary. Mismanagement is a not uncommon fault or shortcoming. The word "gross" merely characterizes the degree of mismanagement and adds nothing to the charge or accusation. The fact that Cunningham was dismissed because he was a poor manager is no reflection on his character or conduct. Persons of the highest repute are known to be poor managers of business affairs. It is not and cannot be contended that a simple charge of mismanagement is of itself within the denunciation of the statute, and by no reasonable judgment can card No. 1 be construed as charging, expressly or impliedly, anything more than mere mismanagement.

■ It is likewise our opinion that card No. 2 does not have the meaning attributed to it and does not offend the statute, because it merely charges Cunningham with mismanagement. The only language appearing on this card which could possibly be thought libelous or defamatory is the statement that Cunningham "depleted our student body finances" and "was dismissed as manager of student affairs when the student body found itself without funds . . . and facing a deficit of $126,000.00." The accompanying delineation on the card is but a graphic reiteration of the statement that Cunningham was dismissed by the student body for having incurred a deficit of $126,000. Such a statement cannot be tortured into a libelous charge of wrongdoing. To "deplete" simply means to reduce or lessen, as by use, exhaustion, or waste. Funk & Wagnalls Dictionary. The depletion of the funds and the resulting deficit or shortage may have resulted from legitimate and necessary uses to which the money was put or for which obligations were incurred. But assuming

934

that the funds were wasted, the resulting deficit was but the natural consequence of Cunningham's mismanagement. Accordingly, the charge of depletion and the statement that Cunningham was dismissed because he incurred a deficit, amounted, at most, to a simple charge of mismanagement. By no reasonable judgment could any other or harsher meaning be implied.

Consideration must be given to the purpose for which the cards were published, namely, political propaganda to defeat Cunningham's election. It is not alleged or contended that the charges of mismanagement were false. Accordingly, and since the cards do not per se offend the statute, the charge that they were libelous, scurrilous, and defamatory must be considered in the light of the well-settled rule that the publication of truthful information regarding candidates for public office is for the interest of the public and, therefore, privileged. Cooley on Torts (3d Ed.) 443; 37 C. J. 143, § 653.

We hold, therefore, that the court erred in denying appellant's motion for a directed verdict and in submitting the case to the jury.

Reversed.